LEVI WING *et al.*

*v.*

CHRISTIAN CARR.

1. LIENS — *priority as between vendor's lien and mechanic's lien.* Where a contract for the sale of real estate is on record, showing that the same has not been paid for at the time that mechanics and material-men enter into contracts for work and labor thereon, under which they afterwards acquire liens for such labor and materials, such liens will be postponed, as far as the land independent of the improvements is concerned, to the lien of the vendor for the purchase money ; and although the vendor may, after the work and material

have been expended, convey the land and take the notes of the purchaser secured by trust deed on the premises for the purchase money, his lien will not thereby be postponed to those of the mechanics and material-men, but will be prior and superior to them as to the land without the improvement, though a subsequent lien as to the improvements made on the land after the purchase.

2. SAME — *no preference between mechanics on account of priority in date of contract.* As between the liens of mechanics and material-men there can be no preference on account of priority in time of contracts under which the labor or material was furnished, for which liens are sought to be enforced, but each must share *pro rata;* and hence it is no error for a court, upon the hearing of petitions for mechanics' liens, to reject evidence offered generally to show how far work on the building had progressed at the date of each claimant's contract, where there was nothing offered to show how such evidence could become material.

APPEAL from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. OMAR BUSHNELL, for the appellants.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case was previously before this court, and is reported in 75 Ill. 385. Most of the facts are there stated with sufficient fullness to dispense with their being repeated here. On the last hearing, as we understand the facts in this, they are different in some material particulars. It is urged that the court below erred in postponing the claim of the heirs of Daniel Armintage, secured by trust deed to Clayburn, and which is represented by J. C. Baker, his successor in the trust. The decree gives to Carr, Fitzsimons, Hubbard, and Wood a paramount lien on the lands and buildings.

It appears that the heirs of Armintage sold the premises to Thielman, and a written contract was entered into, evidencing the terms of the sale, and it was recorded on July 18, 1872. It appears that the first contract entered into by Thielman for the erection of the building was on the 10th of the next month. The deed from the heirs to Thielman was made in pursuance to this contract, and was recorded on September 7, 1872, and was for some

reason refiled for record on July 21, 1873. The trust deed from Thielman to Clayburn, to secure the Dunne notes given for the purchase money of the lot, and for the use of the heirs of Armintage, was recorded, and so was Thielman's trust deed to Caldwell, on the same day. But, from the numbers placed on these trust deeds by the recorder, that to Clayburn was in fact first in time. And Clayburn's trust deed being first recorded, it operated as notice to Caldwell and those for whom he took the trust. The trust deed to Nichols was not recorded until the following December, and there can be no claim that it has priority or equality with the trust deed to secure the purchase money.

It is thus seen that this contract of the heirs of Armintage to sell and convey to Thielman was of record prior to the subsequent incumbrances, whether as mechanics' and material-men's liens or the deeds of trust. It specified the terms of sale — that the purchase money was not paid, and the last payment would not fall due for three years. The entry into the contracts for the building, and trust deeds, were with record notice of this agreement and its terms, and were subject to the payment of the purchase money. These subsequent contracts and liens could in nowise affect the right of the vendors to have their purchase money. That was a right of which they could not be involuntarily deprived, and for its payment they held the legal title, as well as the equitable right to have it paid before their rights could be extinguished. They at that time held the whole title as security for its payment, wholly unaffected by the subsequent liens and contracts.

Then, did they lose their lien, or was it postponed, by conveying the legal title, and taking the trust deed to Clayburn for its security? If so, on what principle or for what reason in justice or equity did they lose the advantage they held? It was not by the payment of the purchase money, or by agreement to release their lien. Nor did they do anything which misled or induced any one to look to the prop-

erty as unincumbered when they acquired their liens. They did nothing to mislead any one, as all could see and know the claim they, as the holders of the notes for the purchase money, had on the property, and the subsequent incumbrancers must be held to have acted with full knowledge of their lien.

The holders of after acquired liens are unable to say, when they acquired them, that they supposed, or had any reason to suppose, that the lien for the purchase money was extinguished, as the records informed them that it still subsisted. Nor did the execution of the deed for the premises to Thielman, and his execution of the deed of trust to secure the purchase money, in equity change the right to enforce the lien. It was prior in time, prior in equity, and, as the subsequent claimants took charged with notice of its existence, it must be first paid from the sale of the ground, independent of the buildings and improvements, as the claim for the purchase money did not become a prior, but a postponed, lien on the improvements made on the lot after its purchase. The court, then, erred in not decreeing it to be a first lien on the lot, and in postponing it to the claims of the subsequent lien holders. The trust deed to Clayburn expressly provides that it shall not be a lien on improvements, that may be made on the lot, and that is conclusive.

On the evidence as now contained in the record, it appears that the notes to Dunne and the trust deed to Claiburn to secure them were given to secure the purchase money owing to the heirs of Armintage, and not for money loaned by Dunne to Thielman. This was, then, a first and paramount lien on the land, independent of the building and improvements placed thereon.

It is next urged that the court erred in excluding evidence offered by appellants. An offer was made to prove how far the building had progressed at the date of each contract and when the lien was created. This the court below refused to permit, and we think correctly. In the

first place, there is nothing appearing or offered to be shown whether the evidence could in any manner change the rights of the parties from what was found and decreed by the court. The proposition was general, and not sufficiently specific to be able to determine in what manner it could be material. As between the mechanics and material-men there can be no preference under the statute. The 11th section of the lien law provides that, "upon questions arising between different creditors, no preference shall be given to him whose contract was first made." And the 12th section requires the court to ascertain the amount due each creditor, and direct the application of the proceeds of sales to be made to each in proportion to their several amounts. As to material-men and mechanics, this is conclusive that they must share *pro rata*.

As to the liens of the trust deeds given on the property, except to secure the purchase money, they are, by the 20th section of the act, postponed to the lien of the mechanics and material-men. It expressly provides that prior or subsequent incumbrances to contracts for work or materials shall not be a lien on the building or materials, until the lien in favor of the person furnishing the work or materials shall be satisfied ; and incumbrances existing at the time of making the contract for the building and materials shall be preferred to the extent of the value of the land. This, then, gave the mechanics and material-men a preference over the trust deeds under which Caldwell, Clark, Nichols, and Wing claim. Thus, we see, under the statute the evidence was not admissible for either purpose, nor can we see that it was proper for any reason.

The decree is reversed and the cause remanded.

*Decree reversed.*