THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY

v.

JAMES BATCHEN ET AL.

1. MECHANIC'S LIEN—SURPLUS.—A decree in a mechanic's lien proceeding, ordering the payment to a mere lien creditor of the entire surplus proceeds of the property after satisfying the other lien creditors and incum-

brancers, is erroneous. The surplus, after satisfying the liens, belongs to the owner of the fee, and such owner should be ascertained, and the surplus ordered to be paid to him. The fact that there was evidence tending to show that the property was not worth enough to satisfy the liens and incumbrances will not change this rule. What the property will bring at a sale cannot be known, judicially, until a sale is made, and the decree should be so framed as to ensure proper distribution, however large or small the proceeds may be.

2. PRIORITY OF LIENS OVER INCUMBRANCES.—Contracts for materials have priority over a subsequent incumbrance by trust deed placed upon the premises, and where the holder of a trust deed for purchase money, made prior to the contracts for materials, which would be the first lien, releases such incumbrance in consideration of the assignment to him of the subsequent incumbrance, or third lien, placed upon the premises, he, by such act, necessarily yields precedence to the lien for materials, which in the order of priority stood ahead of the last trust deed. The first lien had no power to impart to the third any of its precedence so as to give the latter priority to the extent of the incumbrance thus retired behind it.

3. LIMITATION OF TIME FOR FILING PETITION—CUSTOM AS FIXING TIME OF PAYMENT.—Where no time of payment for materials is fixed by the contract, the price becomes due and payable as soon as the delivery is completed; but where a uniform custom and course of dealing on the part of the contractor to demand payment at the close of each month is shown, and that such custom was known to the owner, there arises by implication, an understanding between the parties that credit should be given until the close of each month for all materials delivered during such month, according to the custom.

4. AMENDMENT TO PETITION AS AFFECTING THE LIMITATION.—An amendment of the petition for a lien, although technically it may set out a new contract, will not expose the cause of action to the bar of the statute limiting the time for filing a petition. In applying the statute of limitations in such cases the identity of the original and amended petition is not to be determined by strict and technical rules.

5. ASSIGNMENT OF CLAIM PENDENTE LITE.—A mechanic's lien is so far a personal right, that the proceeding to establish it even if it has been assigned, should be carried on in the name of the assignor, and there was no error in entering the decree in this case in the name of the assignor for the use of the assignee.

6. CESTUI QUE TRUST A NECESSARY PARTY.—The trustee in a deed of trust is not a " creditor " within the meaning of the statute relating to mechanic's lien, and before such lien can be enforced so as to obtain priority over other incumbrances, the *cestui que trust* must, within the period limited by the statute, be made a party to the suit.

7. PETITIONER MUST MAKE INQUIRY AS TO HOLDERS OF INCUMBRANCES —UNKNOWN OWNERS.—Lien creditors, having knowledge of the existence of incumbrances, are put upon inquiry to learn the ownership of such indebtedness at the time of bringing their suit. Failing by the exercise of reasonable diligence to ascertain the ownership of such indebtedness, so as to prop-

erly make them parties defendant, there would seem to be no reason why they may not avail themselves of the provisions of the chancery code relating to unknown owners.

8. EVIDENCE—SALE UNDER TRUST DEED.—Statements of a witness upon cross-examination, that on a certain date, certain premises were sold at a trustee's sale, by reason of default in the payment of interest, is not sufficient proof of a valid sale under a trust deed. It does not show under what deed the sale took place, or by whom, or by whose authority it was made, or that there was any advertisement, or the manner of sale, or that conveyance was made under the sale.

9. POSSESSION OF INDEBTEDNESS AT TIME OF FILING PETITION.—If the assignee of a mortgage indebtedness would protect himself under a proceeding for mechanic's lien, he must show that at the time of the institution of proceedings to enforce the lien he was in possession of the securities. In the absence of such proof, it will be presumed that they remained in the hands of the assignor, until after the date of filing the petition for a lien.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding. Opinion filed August 5, 1880.

The record in this case shows the institution of several suits for the establishment and foreclosure of mechanics' liens upon the same property, their subsequent consolidation, and a final hearing of the consolidated cause on pleadings and proofs, resulting in a decree in favor of the petitioners. The condition of the title to the property in dispute, as shown by the record, is substantially as follows:

On the 31st day of July, 1875, Mary K. Barnes was the owner in fee, subject to the incumbrance of a deed of trust in favor of one Dickerman for $16,000, of certain premises situated on the corner of Wabash avenue and Thirty-fourth street, Chicago, known as lots 1 to 14, block 8, Barnes' addition, etc. Of these lots those numbered from 1 to 11 front on Wabash avenue, and the residue on Thirty-fourth street. On the day above named, J. Spencer Barnes, the husband of said Mary K. Barnes, entered into a written contract on behalf of his wife, which contract seems to have been subsequently carried out by her, to sell and convey said premises to John C. McCord, clear of incumbrances, for the sum of $40,000, of which sum $1,000 was to be paid in cash at the date of the contract, and $6,000 on delivery of the deed, and the remaining $33,000 was to be secured by eleven deeds of trust, viz: one for the sum of $3,000

on each of the eleven lots fronting on Wabash avenue. The contract further provided that said McCord should, within nine months from that date, erect on said eleven lots a block of eleven houses, costing not less that $50,000, and for that purpose he was authorized to place on said lots, incumbrances to the amount of $45,000, viz: $4,000 each on lots 1 to 10, and $5,000 on lot 11, and it was agreed that such incumbrances should have priority over said eleven trust deeds for said $33,-000 of the purchase money.

The conveyance under this contract, instead of being made to John C. McCord, was, at his request, made to his brother, Joseph T. McCord. So far as the eleven lots on Wabash avenue are concerned, it is admitted that said Joseph T. McCord took the title merely as trustee for his brother. As to the character in which he took the title to the three lots on Thirty-fourth street the evidence is conflicting, there being testimony on the one hand tending to show that he acquired said title in his own right, and on the other, that as to those lots also he was a mere trustee for John C. McCord.

For the purpose of raising a fund to be expended in erecting the buildings on Wabash avenue, said John C. McCord, obtained from the Phœnix Mutual Life Insurance Company of Hartford, Conn., a loan of $45,000. For this loan said John C. and Joseph T. McCord executed their eleven joint bonds, bearing date March 13, 1875, payable to the Phœnix Mutual Life Insurance Company, ten of said bonds being for the sum of $4,000 each, and the remaining bond being for the sum of $5,000, and to secure said bonds, said Joseph T. McCord and wife executed to Lyman Baird, as trustee, eleven deeds of trust on said eleven lots fronting on Wabash avenue, the ten of said deeds of trust securing said ten $4,000 bonds, being on said lots numbered from 1 to 10, and the one securing said 5,000 bond being on said lot 11. All of said deeds of trust bore date August 13, 1875, and were recorded September 13, 1875. The eleven deeds of trust to secure the $33,000 of purchase-money were also executed by said Joseph T. McCord and wife, to John W. Marsh, as trustee, bearing date August 13, 1875, and recorded September 14, 1875, the last mentioned trust deeds

being by their terms made subject to those given to secure the loan from the Phœnix Mutual Life Insurance Company.

The deed from Mary K. Barnes and husband to Joseph T. McCord, conveying the fourteen lots, is shown to have been recorded September 30, 1875, but there seems to be no evidence in the record as to its precise date. It is proved, however, that it was not actually executed until some time after September 14th, the date of the recording of the latter of the two series of trust deeds. The first installment of the purchase-money, viz: $1,000, is shown to have been paid down when the contract was signed, and the $6,000 payment was made at or about the time of the execution of the deed.

On the 11th day of November, 1875, said Mary K. Barnes, in order to induce said Dickerman to release his incumbrance on said property, executed to him for the indebtedness thereby secured, deeds of trust on certain other property, and as a further security assigned and delivered to him five of said eleven $3,000 deeds of trust, viz: those covering lots 7, 8, 9, 10 and 11. These deeds of trust were held by Dickerman at the time of the final hearing of the cause.

During the progress of the litigation, the Third National Bank of Chicago, and Huntington W. Jackson, the receiver of said bank, appeared and filed their answer, claiming that on the first day of February, 1876, and before the filing of any of the petitions herein, said Mary K. Barnes, for a valuable consideration, assigned and delivered to said bank the remaining six of said $3,000 deeds of trust, viz: those covering lots 1 to 6, and that said bank and its receiver had ever since continued to be the owner and holder thereof. On the hearing before the master, said deeds of trust and the promissory notes accompanying the same, were produced by the receiver, but there is no evidence beyond the mere possession of said securities at that time, fixing the date of the assignment thereof to the bank.

On the 28th day of December, 1875, John C. McCord obtained from the National Fire Insurance Company of Hartford, Conn., a further loan of $9,000. For this loan said John C. and Joseph T. McCord, on the same day executed their three

joint bonds for $3,000 each, payable to Francis Bradley, and to secure said bonds said Joseph T. McCord and wife also executed to Lyman Baird, as trustee, three several deeds of trust on said lots 12, 13 and 14, which deeds of trust were recorded on said 28th day of December, 1875. Said bonds were thereupon endorsed by said Bradley, and together with said deeds of trust, delivered to said National Fire Insurance Company.

Shortly after the execution of the contract of July 31, 1875, said John C. McCord proceeded to the erection of a block of eleven houses on lots 1 to 11, all under one roof, and sometime afterwards he also commenced the erection of another block of three houses on lots 12, 13 and 14, also under one roof. According to the testimony of John C. McCord, this second block was erected by him, not for himself, but for his brother, and under a contract with him. On this subject, however, the evidence is conflicting.

Sometime in the summer of 1875, the precise date not being fixed by the evidence, Johnson Shaul, one of the petitioners, entered into a verbal contract with said McCord to furnish a quantity of brick at a stipulated price, to be used in erecting said buildings. No time of payment was fixed, but there is evidence tending to show that it was the usual custom and course of dealing on the part of said Shaul to collect all bills for brick delivered during any month at the expiration of such month, and that such custom was known to McCord at the time the contract was made  Shaul commenced delivering brick under this contract about September 1, 1875, and finished sometime in the following November. A further contract for an additional quantity of brick was then made, which was immediately filled, the delivery being completed December 2, 1875. The brick delivered under the first contract were principally used in the Wabash avenue building, a small portion only being used in the Thirty-fourth street building. Those delivered on the second contract were used in the last named building.

The evidence shows that some time prior to these contracts said Shaul and one John B. Legnard were co-partners in business under the firm name of Legnard & Shaul, but that said

Legnard had retired from the firm, the business being thereafter carried on by Shaul alone, the firm name, however, being retained. Legnard was thereupon employed in the business by Shaul as salesman, on a salary, and was so employed at the time said contracts were made and said brick delivered.

A considerable balance of the money due on these contracts remaining unpaid, a petition for a mechanic's lien on both buildings was filed May 22, 1879, by John B. Legnard and Johnson Shaul, as co-partners under the firm name of Legnard & Shaul. February 13, 1878, this petition was amended by striking out the name of Legnard, and by so changing its phraseology as to make it a petition on behalf of Shaul alone. It also appears that during the pendency of the litigation and before final hearing, the entire claim of said Shaul in suit was by him sold and assigned to one D. J. Hubbard, who, at the time of the final decree, continued to be the owner of the same.

The decree establishes a lien in favor of Shaul, for the use of said Hubbard, on each of said buildings for the balance due on the brick used therein respectively, and declares said liens, as to both pieces of property, superior, both as to the lots and buildings, to the several trust deeds thereon.

On the 14th day of September, 1875, the firm of Homan, Brown & Co., consisting of Joseph Homan, David S. Brown and William Tothill, entered in a written contract with said John C. McCord, by which they agreed to furnish for said buildings certain door and window frames, doors, blinds, stairs, mouldings, mill-work and various other materials specified in the contract, for which said McCord agreed to pay them the sum of $12,000, of which sum $5,000 was to be paid by the conveyance to them of certain real estate, and the balance in cash, payable as the work progressed. In pursuance of this agree: ment, Homan, Brown & Co. furnished for said building materials amounting to $10,282,64, for which they were paid $5,000 by the conveyance of them of said real estate, and also various sums in money. On the 18th day of May, 1876, they filed their petition for a mechanic's lien on both buildings, claiming a balance due them of $4,400. The court by its decree, after disallowing certain credits which had been allowed

to the defendants by the master, found a balance due Homan, Brown & Co., including interest, of $4,343.22. A certain equitable set-off, however, amounting to $4,219.50, which had been set up by the defendants by cross-bill, was allowed to the court, leaving a balance of $123.72, for which the court decreed a lien on said buildings in certain proportions, the lien on the Thirty-Fourth street property being declared to have precedence over the trust deeds thereon both as to the lots and buildings, and the lien on the Wabash avenue property being declared to have precedence over the trust deeds thereon as to the building only. Homan, Brown & Co. have filed cross-errors assigning for error the allowance of said equitable set-off.

On or about the first day of August, 1875, Arthur T. Howe and Halsey W. Bovee, co-partners doing business under the firm name of Arthur T. Howe & Co., entered into a verbal contract with said John C. McCord to furnish lime, stucco and certain other building materials for said buildings at certain stipulated prices. Under this contract they commenced delivering said materials August 23, 1875, and finished February 11, 1876. On the 23d day of June, 1876, they filed their petition for a lien on both buildings, and the court by its decree found due them the sum of $1,435.61, for which sum a lien was given on said buildings respectively; in proportion to the number of houses in each, which liens, as to the both buildings, were declared to be entitled to precedence over said trust deeds to said Baird, both as to the lots and buildings.

On the 20th day of September, 1875, said John C. McCord requested Ludwig Wolff to furnish for said buildings the copper and brass materials, bath-tubs, boilers, earthern and stone ware, water closets, traps, etc., as they should be needed from time to time in the construction of said buildings. Nothing was said as to the price or the time at which they should be paid for. In compliance with such request, said Wolff, between that day and May 1, 1876, furnished said material for said buildings, and on the 19th day of July, 1876, filed his petition for a lien on both of said buildings for the balance due him therefor. On final hearing there was found

to be due him for principal and interest the sum of $909.35, which sum was in like manner divided between said buildings, and a lien therefor decreed, the lien on the Thirty-fourth street property being declared to be superior to the trust deeds to Baird both as to the lots and building, and the lien on the Wabash avenue property superior to the trust deeds to Baird as to the building only.

On the 23d day of March, 1876, the Chicago Marble Manufacturing Company entered into a verbal contract with said John C. McCord to furnish and put up in said buildings a certain number of mantels and grates for the sum of $1,500, said work and materials to be commenced within a reasonable time after notice that the buildings were in readiness to receive said mantels, and to be completed as soon as practicable thereafter, said work to be paid for in thirty-eight, sixty and ninety days from the date of the contract. In pursuance of said contract said company commenced said work on or about April 1, 1876, and completed the same on or about May 1, 1876, $1,250 of said work and materials going into the Wabash avenue building, and $300 into the Thirty-fourth street building. No part of the contract price being paid, said company, on the 23d day of October, 1876, filed its petition for a lien on both buildings, and the court, by its decree, gave said company a lien thereon in accordance with the prayer of said petition, said lien on each of said buildings being declared to be subject to said trust deeds to Baird as to the lots, but superior to said trust deeds as to the building.

On or about the 22nd day of September, 1865, Corwin C. Thompson and Charles A. Paltzer, co-partners, under the firm name of C. C. Thompson & Co., entered into a contract with said John C. McCord to furnish certain lumber and flooring for said buildings, and the sum of $503.20 of the lumber furnished under said contract being unpaid, said C. C. Thompson & Co., on the 14th day of June, 1876, filed their petition for a lien on each of said buildings, and were decreed such lien, the lien on the Thirty-fourth street property being declared to be superior to said trust deeds, both as to the lots and building, and the lien on the Wabash avenue property being declared

to have precedence over the trust deeds to Baird as to the building.

On the 20th day of October, 1875, James Batchen and John Smith, co-partners under the firm name of James Batchen & Co., entered into a verbal contract with said John C. McCord, to furnish and put up certain stone steps, caps, sills, water-tables, etc., in said Thirty-fourth street building, at a specified price, and also on the 29th day of October, 1875, said James Batchen & Co. entered into a contract in writing with said John C. McCord, to furnish and set the stone work in the Wabash avenue building, upon certain terms, and at a specified price. Both contracts were performed, and said James Batchen & Co. also did a small amount of extra work on the last named building. On the 21st day of April, 1876, they filed two separate petitions for liens upon said two buildings, but after the hearing before the master, and before final decree, they, by leave of the court, dismissed their petition for a lien on the Wabash avenue property, so far as it related to the materials and labor furnished under the written contract, and were, thereupon, decreed a lien on the Wabash avenue property for $101.87, and on the Thirty-fourth street property for $95.57, and it was declared that said first mentioned lien should have priority over the lien of the Phœnix Mutual Life Insurance Company as to the building only, and that said last mentioned lien should have priority over the lien of the National Fire Insurance Company as to both the building and land.

Among the defendants to the petitions of James Batchen & Co., was one Apolias L. Goff, who on the 31st day of October, 1876, filed his answers to both of said petitions, setting up verbal contracts between him and said John C. McCord, entered into on the 20th day of October, 1875, by which said Goff agreed to lay the brick in the walls of said buildings, and to do the lathing therein, at a certain stipulated price, said work to be completed by the first day of May, 1876, and to be paid for on that day. It was further alleged that said agreements were performed, and that there was a large balance due said Goff thereon. In his said answers said Goff prayed for a

lien on said property for said balance, and by the decree the total amount due him was fixed at $1,254.05, and he was awarded a lien on the entire property for that sum, said lien, however, being made subject to the lien of said trust deeds to Baird, both as to the land and buildings.

To all of said petitions, except the petition of James Batchen & Co., relating to the Thirty-fourth street building, John C. Mc-Cord, Joseph T. McCord, Lyman Baird, the Phœnix Mutual Life Insurance Company, John W. Marsh and Mary K. Barnes were made parties defendant. Neither of said petitions, however, made said Dickerman, the Third National Bank of Chicago, Huntington W. Jackson its receiver, nor the National Fire Insurance Company, parties, nor were they or either of them made parties to the record in any form until long after the expiration of the six months limited by Sec. 28 of the Mechanic's lien law. To none of said petitions except the two petitions of James Batchen & Co., was Francis Bradley made a party, nor was he otherwise made a party to the record until after the expiration of said six months.

During the pendency of the litigation, said John C. McCord and Joseph T. McCord were adjudicated bankrupts, and thereupon their assignee in bankruptcy was made a party defendant to all of said petitions.

There is evidence tending to show that sometime prior to the final hearing of the cause, said lots 1 to 11 were sold at a trustee's sale, and that at such sale said lots were bid off and purchased on behalf of the the Phœnix Mutual Life Insurance Company by one Aaron C. Goodman.

The decree finds due the Phœnix Mutual Life Insurance Company the sum of $5,689.35 on each of the ten trust deeds on lots 1 to 10, and $7,111.65 on the trust deed on lot 11, and declares the lien therefor to be subject to said liens of Johnson Shaul and Arthur T. Howe & Co., both as to the land and building, and subject to the liens of C. C. Thompson & Co., Ludwig Wolff, The Chicago Marble Manufacturing Co., Homan, Brown & Co., and James Batchen & Co., as to the buildings on said lots. It also finds due The National Fire Insurance Company the sum of $3,841.74 on each of the deeds of

trust on lots 12, 13 and 14, but finds that the lien therefor is subject to the liens of Johnson Shaul, Arthur T. Howe & Co., Ludwig Wolff, C. C. Thompson & Co., Homan Brown & Co., and James Batchen & Co., both as to building and land, and subject to the lien of The Chicago Marble Manufacturing Co., as to the building.

The decree orders the sale of said premises by the master, and the payment out of the proceeds of such sale of the liens of the several petitioners above named except said Goff, and of the incumbrances in favor of the Phœnix Mutual Life Insurance Company and the National Fire Insurance Company, according to their respective priorities as therein determined, and the payment of the residue of the proceeds of both pieces of property to said Goff.

Messrs. BOUTELL & WATERMAN, for appellant; that the purchaser of land under a contract to convey, can charge the land with a lien only to the extent of his interest therein at the time; cited Hickox v. Greenwood, 94 Ill. 266; Wing v. Carr, 86 Ill. 348; Alden v. Garner, 32 Ill. 35; Rev. Stat. Chap. 82, §§ 2, 21.

The *cestui que trust* not having been made a party until after the statutory limitation, is not barred by the decree: Gates v. Franklin Bank, 85 Ill. 257; Scanlan v. Cobb, 85 Ill. 300; Crowl v. Nagle, 86 Ill. 437.

Parties claiming under Joseph McCord are not estopped to deny the ownership of John McCord because of the former's representations; such representations not having been relied upon by the contractors: Bigelow on Estoppel, 437; Mills v. Graves, 38 Ill. 455; Hefner v. Vandolah, 57 Ill. 520; Chandler v. White, 84 Ill. 435.

Amendments take effect as regards the Statute of Limitations, from the time they are made: Angell on Limitations, § 330; Miller v. McIntyre, 6 Pet. 61; Dudley v. Price, 10 B. Mon. 84; Crowl v. Nagle, 86 Ill. 437; Connett v. Chicago, 8 Chicago Legal News, 323; Ill. Cent. R. R. Co. v. Cobb, 64 Ill. 128.

The assignee of the claim assigned should have been made a party: Elder v. Jones, 85 Ill. 386; Sedgwick v. Cleveland, 7

Phœnix Mut. Ins. Co. v. Batchen.

Paige, 287; Story's Eq. Pl. §§ 329–349; Daniell's Ch. Pr. 1598.

A reservation of lien for purchase money in a deed of conveyance is not a vendor's lien, but a mortgage, and notice to all the world of his rights: Markoe v. Andras, 67 Ill. 34; Carpenter v. Mitchell, 54 Ill. 126.

Possession is evidence of ownership: 2 Greenl. Ev. § 164.

In the absence of evidence to the contrary, the presumption is that the transfer of a note was made at or soon after the date of the note: Balch v. Onion, 4 Cush. 559.

A mechanic's lien is a secret lien, waived by taking other security, lost if not diligently pursued: Cook v. Heald, 21 Ill. 429; Kinzey v. Thomas, 28 Ill. 502; Brady v. Anderson, 24 Ill. 112; Rothgerber v. Dupuy, 64 Ill. 452; Huntington v. Barton, 64 Ill. 502.

Mr. DAVID FALES, Mr. E. B. PAYNE and Messrs. MILLER & FROST, for various appellees; that there is no force to the objection that the lien was found as to the blocks of houses, and not apportioned as to the lots, cited Orr v. N. W. Mut. Life Ins. Co. 86 Ill. 260.

The lien attaches to the after-acquired interest of the owner as well as upon the interest held at the time of making the contract: Tracy v. Rogers 69 Ill. 662; Fitzhugh v. Smith 62 Ill. 486.

Appellants saw appellees complete their contract, with full knowledge of their rights, and did not object, and appellees are now entitled to enforce a lien against the whole land: Taylor v. Gilsdorf, 74 Ill. 354; Van Court v. Bushnell 21 Ill. 626; Roach v. Chapin 27 Ill. 195, Schwartz v. Saunders 46 Ill. 18.

The lien for purchase-money was cut off by assigning the the same, and it makes no difference whether such assignment was before or after commencement of the lien suits: Elder v. Jones, 85 Ill. 386; Bonnell v. Holt, 89 Ill. 71.

As against improvement contracts, the lien of trust deeds for borrowed money takes effect only from date of their record: Thielman v. Carr, 75 Ill. 385; Raymond v. Ewing, 26 Ill. 329; Smith v. Moore, 26 Ill. 393.

The contract of a material man may be assigned like any other equitable chose in action: Phillips on Mech.'s Lien, 79; Tuttle v. Howe, 14 Minn. 145; Iage v. Bossieux, 15 Gratt. 83; Skyrme v. Occidental Mill Co. 8 Helm, 219; Johns v. Bolton, 12 Penn. 339; Busfuld v. Wheeler, 14 Allen, 139; Hubbell v. Schreyer, 14 Abb. Pr. 284; Westervelt v. Levy, 2 Duer, 354; Rodgers v. Omaha Hotel Co. Am. Rep. 246; Goff v. Papin, 34 Mo. 177.

When the assignment is *pendente lite* it is not necessary to bring the assignee into court: 2 Daniell's Ch. 1517; Eades v. Harris, 1 Young & Coll. 230; 1 Story's Eq. Jur. § 406; Cook v. Mancins, 5 Johns. Ch. 93; Bishop of Winchester v. Paine, 11 Ves. 194; Murray v. Ballou, 1 Johns. Ch. 577; Metcalfe v. Pulvertoft, 2 Ves. & B. 204; Hoxie v. Carr, 1 Sumner, 173; Greenwich Bank v. Lovrins, 2 Sandf. Ch. 70.

Where the statute is silent the assignee must sue in the name of the assignor: Phillips on Mech's Liens, 80; Ritter v. Stevenson, 7 Cal. 388; Hallahan v. Herbert, 11 Abb. Pr. 326; Palmer v. Merrill, 6 Cush. 282; McKinney v. Alvis, 14 Ill. 33; C. & V. R. R. Co. v. Fackney, 78 Ill. 116.

BAILEY, J. A great variety of questions are presented by the counsel for the various parties, but we shall take the time to consider such only as in our opinion are essential to the proper determination of the appeal.

The decree is manifestly erroneous in ordering the payment to Goff, a mere lien creditor, of the entire surplus proceeds of the property after satisfying the other lien creditors, and paying the incumbrances held by the Phoenix Life Insurance Company and the National Fire Insurance Company. The surplus, after the satisfaction of all liens, belongs to the owner of the fee, and such owner should have been ascertained and the surplus ordered to be paid to him. It is true, some evidence was offered in relation to the value of the premises, from which it is argued that the property is not worth, and will not bring, sufficient to satisfy said liens and incumbrances, and that there is, therefore, no reasonable probability of any surplus whatever, and certainly no more than sufficient to pay Goff the

amount of his claim.   The sum property will bring at a judicial sale cannot and ought not to be determined beforehand by evidence.   Property, when subjected to such sale, should be sold in the most advantageous manner, and so as to bring the highest practicable price.   Evidence of value is often heard to determine a minimum below which the property shall not be struck off, but we know of no principle upon which it can be heard for the purpose of fixing in advance a maximum price. What the property will bring cannot be known, judicially, until it is actually subjected to sale, and the decree should be so framed as to ensure proper distribution, however large or however small the actual proceeds may be.

It is urged that the court erred in giving to Johnson Shaul and Arthur T. Howe & Co. a preference as to lots 1 to 11, over the deeds of trust in favor of the Phœnix Mutual Life Insurance Company.   It is not disputed that the contracts upon which these liens were based were made before the execution of said deeds of trust.   True, at that time the McCords held merely a contract for the conveyance of the land, and only $1,000 of the purchase money had been paid.   The contract, however, had not been recorded, and there is no evidence that either Shaul or Arthur T. Howe & Co., at the time they made said contracts and entered upon their fulfillment, had any notice of its terms, nor had they any notice that any portion of the purchase money remained unpaid.

In Wing v. Carr, 86 Ill. 347, it was held that where a contract for the sale of real estate *is on record*, showing that the same has not been paid for at the time the mechanics and material men enter into contracts for work and labor thereon, under which they afterwards acquire liens for such labor and materials, such liens will be postponed, so far as the land, independent of the improvements, is concerned, to the lien of the vendor for the purchase money.   In that case it seems very clear from the reasoning of the court, that if the contract had not been on record a different rule would have been applied.

Counsel for the appellants seem to insist, however, that, as the statute gives to the mechanic a lien upon such estate or other interest in the land as the owner may have at the time of the

making of the contract, the lien must necessarily be limited to the precise interest the owner then has, and can be extended to no other or greater interest, whatever may be the subsequent condition of the title. A moment's reflection will, we think, convince any one that the rule here contended for is far from being universally applicable. Doubtless, if the owner at the time the contract is made, has only a limited or particular interest in the land, and acquires no greater interest afterwards, the lien will be limited to that interest alone. But if the owner subsequently acquires a greater interest, ordinarily the lien will cover that also. For instance, if at the date of the contract the land is incumbered to nearly or quite its full value, and such incumbrance is afterwards paid off by the owner, it is clear that the lien will attach to the entire estate and not to the mere equity of redemption. Or if the owner at the date of his contract with the mechanic holds the land by a contract of purchase with but a small part of the purchase money paid, and afterwards pay, the purchase money and obtains a conveyance of the title, no one, we think, would contend that the lien of the mechanic should still be limited to the mere equitable interest the owner had at the date of the contract.

Nor does it seem to us that the case of Hickox v. Greenwood, 96 Ill. 266, to which we are referred holds any different doctrine. There the party with whom the mechanic made his contract held the land by contract of purchase, and at the time of the decree the purchase money had not been paid nor the land conveyed, and it was held that the interest remaining in the hands of the vendor could not be affected by the lien.

In the present case, the land, shortly after the contracts were made, was conveyed to the vendee, and the only question is as to the extent to which certain incumbrances executed subsequent to the date of the contracts are to be protected from the operation of the mechanics' liens. We are not called upon to say what the rights of the parties would have been had the deeds of trust given for the purchase money retained the priority to which they were originally entitled. It may even be conceded that in such case the purchase money incumbrance would have had priority over the mechanics' liens, notwith-

standing the want of notice to the mechanics at the time they entered into their contracts. But had such priority been retained by the purchase-money incumbrance, it can scarcely be questioned that the mechanics' liens would have been superior to the incumbrance for borrowed money. They would have been first in time, and consequently first in right. This proposition is settled by the case of Theilman v. Carr, 75 Ill. 385. It was there held that a deed of trust for money borrowed, made and delivered before, but not recorded until after the making of the contract with the mechanics, will not have priority over the mechanic's liens, but the latter will take precedence of the lien created by the deed of trust. In the present case, the contracts with the mechanics were made not only before the recording, but before the execution of the deeds of trust to secure the loan.

Conceding, then, the original right of the purchase-money incumbrance to priority, the order of priority, had that right been retained, would have been as follows: First, the purchase money incumbrance; second, the mechanics' liens; and, third, the incumbrance given to secure the loan. Such being their order, could the first incumbrance by voluntarily yielding priority to the third, carry with it the second? We think not. The first incumbrance, by retiring behind the third, by the same act, necessarily yielded precedence to every other incumbrance which, in the order of priority, stood ahead of the third. Certainly the first and third could not exchange places so as to make the third incumbrance the first, without the consent of the intermediate incumbrance, nor had the first the power, as counsel seem to suggest, to impart to the third any portion of its own precedence, so as to give the latter priority to the extent of the amount of the incumbrance thus retiring behind it. We see, then, no error in the decree so far as it gives these two mechanics' liens priority over the deeds of trust in favor of the Phœnix Mutual Life Insurance Company.

The point is made that the petition of Johnson Shaul was not filed within six months after the last payment under Shaul's first and principal contract became due. The petition was filed May 22, 1876, and there is some evidence tending to

show that Shaul finished delivering the brick under that contract November 14, 1875. If such was the fact, and the price became immediately due and payable as soon as the delivery was completed, then more than six months intervened between the maturity of the last payment and the institution of the suit. Where no time of payment for goods sold and delivered is fixed by the contract, the price becomes due and payable as soon as the delivery is completed. In this case, however, the evidence tends to show a uniform custom and course of dealing on the part of Shaul to present for payment at the close of each month bills for all brick delivered during the month, and that such custom was known to McCord at the time he made the contract with Shaul. Under these circumstances there arises, by implication, an understanding between the parties that credit should be given until the close of each month for all brick delivered during such month, and that payments should not mature until the close of the month. If we incorporate into the contract this implied provision, the last payment did not mature until November 30, 1875, which was less than six months prior to the institution of the suit.

It is also objected that the amendment of the petition originally filed in the name of Legnard & Shaul, so as to make a petition on behalf of Shaul alone, must be regarded as the institution of the present suit within the meaning of the Mechanics' Lien law. It is true the amendment involved not only the elimination from the record of the name of one petitioner, but also material changes in the essential description of the contract in the petition. Technically, the contract set out in the amended petition is a different contract from the one described in the original petition. The former is a contract with Shaul alone, and the latter with Legnard and Shaul jointly. But we do not think that in applying the Statute of Limitations the identity of the original and amended petition is to be determined by any such strict and technical rules. It cannot be doubted that the same cause of action essentially is set up in both petitions, and that the contract set out in the amended petition was the one upon which the action was originally intended to be instituted. The difficulty was an error in the recital of the

contract in the first instance. The case does not differ in principle from any other amendment of a pleading by which an error in the description of a contract is corrected. Technically, in all such cases, the original and amended pleading describe two different contracts, but it has never been held that the amendment is equivalent to the commencement of a new suit upon a new cause of action, so as to expose a suit commenced before the period of limitation had run to the bar of the statute.

A further point is made that, by the assignment from Shaul to Hubbard of his entire claim in litigation, the suit, so far as Shaul's petition was concerned, became defective for want of proper parties, and that it was erroneous for the court to proceed farther therein until Hubbard was, in some proper form, made a party to the suit. It is not disputed that this assignment was made *pendente lite.* Mr. Story, in his treatise on Equity Pleadings, Sec. 156, says: " Generally speaking, an assignee, *pendente lite,* need not be made a party to the bill, or be brought before the court; for every person purchasing, *pendente lite,* is treated as a purchaser with notice, and is subject to all the equities of the persons under whom he claims in privity. And it will make no difference whether the assignee *pendente lite* be the claimant of a legal or of an equitable interest, or whether he be the assignee of the plaintiffs or of the defendants. Still, however, it is often important to bring such assignees before the court, as parties, by a supplementary bill, in order to take away a cloud hanging over the title, or to compel the assignee to do some act, or to join in some conveyance. So that the assignee, although not a necessary party, may at the same time be a proper party at the election of the plaintiff."

It may be remarked that, in this case, there are present none of the exceptional circumstances which in many cases, in the opinion of Mr. Story, render it important or necessary to bring the assignee before the court.

But we think the lien given by the statute to a mechanic or material man is so far a *personal right* that the proceeding to establish it, even if the right itself should be held to be assignable in equity, should be carried on in the name of the assignor

rather than that of the assignee. Whether a mechanic's lien is assignable at all, is a question upon which the authorities are far from being harmonious. In C. & V. R. R. Co. v. Fackney, 78 Ill. 116, the Supreme Court of this State expresses a grave doubt as to whether the liens given by the statute upon the property of railway companies are susceptible of assignment. In other States, courts of the highest respectability have held that mechanics' liens are not assignable so as to enable the assignee to prosecute, in his own name, suits to establish and enforce them. Caldwell v. Lawrence, 10 Wis. 331; Pearsons v. Tincker, 36 Me. 384; Daubigny v. Duval, 5 Tenn. 604; Rollin v. Cross, 45 N. Y. 766. These authorities we are inclined to follow. We think the decree was properly entered in the name of Shaul for the use of his assignee.

So far as the decree gives to the various lien creditors a priority over the deeds of trust in favor of the National Fire Insurance Company, it is clearly erroneous. Section 28 of the Mechanic's Lien law provides that no creditor shall be allowed to enforce the lien created under the provisions of said law, as against or to the prejudice of any other creditor or incumbrance, unless suit be instituted to enforce such lien within six months after the last payment for labor or materials shall have become due and payable. In this case, the trustee in the several deeds of trust given to secure the money borrowed of the National Fire Insurance Company was made a party defendant to all of the petitions at the time they were originally filed, which, in each case, was within the six months limited by the statute. The bonds secured by said deeds of trust were drawn payable to Francis Bradley, and were by him indorsed and delivered to the insurance company. To none of the petitions was said company made a party, and said Bradley was made a party to but one, viz: that of James Batchen & Co.

The trustee in a deed of trust given to secure the payment of money to another person, is not the "creditor" meant by the section of the statute above recited. The creditor is the person to whom the debt is owing. True, the trustee is a proper and, perhaps, a necessary party, to a proceeding for the enforcement of the mechanic's lien, but before the lien can be so enforced as

to obtain priority over the incumbrance, the *cestui que trust* must, within the period limited by the statute, be made a party to the suit. We had occasion to consider this question in Bayard v. McGraw, 1 Bradwell, 134, and Clark v. Manning, 4 Id. 649, and need not here repeat the course of reasoning there adopted. See, also, Dunphy v. Riddle, 86 Ill. 22; Crowl v. Nagle, Id. 437; Ridenour v. Shideler, 5 Bradwell, 180.

None of the lien suits were brought against the creditor owning these incumbrances within the six months, and no decree should have been rendered against or to its prejudice. The lien creditors failed to obtain priority over these deeds of trust either as to the buildings or land.

In one of the lien suits, it is true, Francis Bradley was made a defendant in due time, and some question may arise as to whether their making him a party was not sufficient to give the petitioners in that suit a priority over the deeds of trust. He was the payee in the bonds, and there was nothing on record evidencing that the bonds had passed out of his hands. In point of fact, however, they were assigned by him to the Insurance Company on the very day of their date.

The lien creditors knew that these bonds were negotiable securities, and were liable to be assigned. They were thus put upon inquiry, and it was their duty to ascertain whether at the time of bringing their suits the bonds still remained in the hands of the payee. If they desired to obtain a priority over the deeds of trust, they should have used at least reasonable diligence to learn the ownership of the indebtedness thereby secured. The record fails to show that any effort whatever was made to ascertain whether Bradley still held the bonds, nor does it appear that the petitioners may not have actually known of their negotiation to the Insurance Company. What would have been the position and rights of the petitioners had they made due inquiry and failed to ascertain the ownership of the bonds, we need not decide. We see no reason, however, why in that event they might not have availed themselves of the provisions of the chancery code in relation to unknown owners. Bayard v. McGraw, *supra*.

The decree entirely fails to notice the eleven $3.000 notes

and deeds of trust given to secure $33,000 of the purchase money, or to assign them any position whatever in the succession of incumbrances. This feature of the decree is sought to be justified by the evidence of a sale by the trustee under the prior deeds of trust in favor of the Phœnix Mutual Life Insurance Company, whereby, as it is claimed, the purchase money deeds of trust were foreclosed and extinguished. We are inclined to doubt whether there is, as against the holders of the last mentioned deeds of trust, any sufficient evidence of a trustee's sale. The only evidence we find is contained in the oral testimony of Lyman Baird, the trustee. This witness having been produced and examined by the defendants, stated on his cross-examination, in answer to questions put to him by counsel for the petitioners, in substance, that sometime in March, 1877, the eleven Wabash avenue houses were sold at a trustee's sale; that the premises were sold to Aaron C. Goodman, as representing the Phœnix Mutual Life Insurance Company, for $45,000, there being at the time a default in the payment of two successive installments of interest.

Even if it were competent to prove a sale of this character by parol, the evidence would seem to come far short of showing such sale as would foreclose the rights of the holders of the purchase-money incumbrance. It does not show under what deeds of trust the sale took place, or by whom or by whose authority it was made, or that there was any advertisement, or in what manner the sale was made, or that any of the conditions imposed by the deeds of trust were observed, or that any conveyance followed the sale. It is true, in a cross-bill filed in the cause by the Phœnix Mutual Life Insurance Company and other against Homan, Brown & Co., there are distinct averments of the sale, but as the Third National Bank, Jackson its receiver, and Dickerman, the holders of the eleven $3,000 deeds of trust were neither of them parties to that bill, they cannot be affected by its averments or admissions. As the cause, however, must be remanded for further proceedings, additional evidence as to said trustee's sale may be heard.

There is no evidence fixing the date at which the six notes and deeds of trust held by the receiver came into the possession

Phœnix Mut. Ins. Co. v: Batchen.

of the Third National Bank.   Mere possession at the date of the hearing does not of itself prove possession at the time the petitions were filed.   The burden was upon the receiver to show that the bank obtained said securities prior to the institution of the several lien suits, and in the absence of such proof, it will be presumed that they remained in the hands of Mrs. Barnes until after that date.   Austin v. Wohler, 5 Bradwell, 300.

There seems to be sufficient proof that Dickerman came into possession of the five notes and deeds of trust held by him, prior to the institution of either of the lien suits.   As he was not  made a party, we are inclined to hold, in accordance with the principles already laid down, that the petitioners obtained no priority over his incumbrance.   What the rights of the parties would have been, had trustees sales under the prior deeds of trust been sufficiently proved, we are not called upon to decide.

We have carefully examined those portions of the record bearing upon the cross-errors assigned by Homan, Brown & Co., and are of the opinion that the court below decided correctly in allowing the equitable set-off to their claim set up in the cross-bill of the McCords et al., and in refusing to grant the relief prayed for by Homan, Brown & Co., in their supplemental bill.

For the errors above pointed out, the decree will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Decree reversed.