SIMON MINCHROD et al.

v.

JOSEPH ULLMANN et al.

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. PRACTICE—*in equity—exceptions to master's report need not plead evidence.*  Exceptions to a master's report need not plead the evidence, where it is all returned, as required by the statute, into the circuit court.

2. SAME—*manner of proceeding upon exception relating to a matter of fact.*  A specific exception relating to a matter of fact is sufficient although it does not recite the evidence, and upon the hearing the counsel for the respective parties will have the right to present to the court, from the record, such evidence as tends to establish or disprove the fact.

3. SAME—*master need not state on what evidence he relies as relevant in overruling objection.*  The master need not state, in overruling an objection, what particular evidence he regards as relevant to his conclusion.

4. EVIDENCE—*what not sufficient to impeach notary's acknowledgment to deed of married woman.*  If the certificate of the notary to an acknowledgment by a married woman can be impeached by parol, the testimony of the notary that he did not recollect asking such woman whether she released her right of homestead, and did not think he did, is insufficient.

5. SAME—*when contracts set out in original bill may be proved.*  Contracts set out in an original bill are admissible in evidence, although not set out in a cross-bill, where the other party to the suit, in answering the cross-bill, avers that the facts and circumstances detailed in the original bill are substantially true, so that all parties have averred that they were made.

6. MORTGAGES—*vacating settlement of account secured by mortgage—interest.*  Upon opening an account secured by mortgage and vacating a settlement, an interest credit included in notes given upon such settlement is properly ignored.

7. SAME—*to secure sum to be found due upon accounting—mortgagee's responsibility.*  A mortgagee in a mortgage to secure whatever may be found due upon an accounting at the separation of a partner from the firm and to secure advances to be made, is not responsible because the mortgagor's share of the profits of the firm does not amount to as much as he stated at the time the mortgage was made and in his honest opinion believed it would.

8. PARTIES—*who proper parties on foreclosure of mortgage given to firm.* One who is a member of a firm when a mortgage given to it is re-assigned to it by third parties is a proper party complainant to a cross-bill to foreclose such mortgage, although he was not a member when the mortgage was made.

9. APPEALS AND ERRORS—*objection to notice of sale under foreclosure cannot be first made on appeal.* Objection that the advertisement of sale under a decree was not published in a proper newspaper is not sustained where the certificate identifies such paper as one previously held to be a secular newspaper of general circulation.

10. SAME—*improper addition to amount found due by master—how treated on appeal.* The Appellate Court, upon appeal from a decree foreclosing a mortgage under a cross-bill, may deduct an increase made by the chancellor in the amount found due over that found by the master without exceptions taken by the complainant in the cross-bill, without reversing the entire decree, where there is no reason for setting aside the sale.

*Minchrod* v. *Ullmann*, 60 Ill. App. 400, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

MOSES, PAM & KENNEDY, for plaintiffs in error.

EDWARD R. JEWETT, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Simon Minchrod, one of the plaintiffs in error, filed the original bill in this case December 23, 1887, against the defendants in error, Joseph Ullmann, Charles Ullmann and Samuel Ullmann, partners under the firm name of Joseph Ullmann, the plaintiff in error Hattie Minchrod, wife of said Simon Minchrod, together with Adolph Ladenburg, Ernest Thalmann and Abraham Limburger, composing the firm of Ladenburg, Thalmann & Co., for an accounting of the business of said firm of Joseph Ullmann, in which complainant had been interested in the fur trade, and to set aside a note and mortgage for the sum of $20,000 made by complainant and his wife to

Joseph Ullmann, and two agreements signed by com-
plainant and said Joseph Ullmann, dated December 1,
1885, and January 12, 1886. The ground on which it was
sought to set aside the mortgage and agreements was,
that they were obtained by force and fraud when com-
plainant was sick and his mind impaired so that he was
unable to comprehend or understand the matters set
forth in said writings or either of them. It was also
charged in the bill that defendants Ladenburg, Thal-
mann & Co. held the note and mortgage as collateral
security to demands against Ullmann, and that they were
not innocent holders of the same. The bill was answered
and a cross-bill filed on the part of Ladenburg, Thal-
mann & Co. to foreclose the mortgage. Hattie Minchrod
answered the cross-bill, averring that the facts and cir-
cumstances detailed in the original bill of Simon Minch-
rod were true, and that he was entitled to the relief
prayed for in his bill, and denying the right to a fore-
closure. On March 13, 1891, the defendants in error, then
composing the firm of Joseph Ullmann, filed a supple-
mental cross-bill, alleging the re-assignment to that firm
by Ladenburg, Thalmann & Co. of the note and mort-
gage, and asking for the rights and benefits of the cross-
bill and to be permitted to prosecute the same. After
the filing of this supplemental cross-bill the foreclosure
was prosecuted in the name of defendants in error. On
December 2, 1892, Hattie Minchrod filed a cross-bill, ask-
ing to have her signature to the mortgage waiving dower
and homestead rights canceled and held of no effect, on
the ground that Joseph Ullmann represented to her that
the mortgage was to be executed for the purpose of rais-
ing $20,000 to enable her husband to go into business as
soon as he should get well, and that it was not applied to
that purpose.

The issues were made on these bills and referred to a
master, who took and reported to the court the evidence
of the respective parties, together with his findings that

the original bill of Simon Minchrod and the cross-bill of Hattie Minchrod should be dismissed for want of equity; that the material allegations in the cross-bill for foreclosure had been proved and were true, and that the complainants therein were entitled to have the mortgage foreclosed for the sum of $24,672.04 due and owing to defendants in error. Plaintiffs in error having filed before the master seventy-four objections to his report, renewed the same as exceptions in the circuit court, and the cause was heard upon said exceptions. The master's report was approved by the court, except so far as it was modified by disregarding a finding of the master that there was a settlement between the parties of the amount of Simon Minchrod's indebtedness to the firm of Joseph Ullmann. The original bill and the cross-bill of Hattie Minchrod were dismissed for want of equity, the material allegations of the cross-bill for foreclosure were found to be true, and there was a decree of foreclosure for the sum of $25,556.62. The mortgaged property was sold for $19,900, and there was a decree against Simon Minchrod for the deficiency of $6237.13. Plaintiffs in error prosecuted a writ of error to the Appellate Court for the First District, where the decree was affirmed in all respects save as to the deficiency decree, which was reduced to $5318.39, and reversed as to the excess above that sum.

It is asserted that the Appellate Court refused to investigate the exceptions to the master's report or the action of the chancellor thereon, either for the reason that the exceptions themselves did not specifically recite or set forth the evidence relied upon in support of the exceptions to show that the conclusion of the master was wrong, or because the master himself did not recite, together with the objections disallowed, the evidence upon which he based his conclusions. The record does not sustain the statement of counsel, but the judgment of the Appellate Court shows that the matters assigned for error were duly considered. The evidence was all

returned, as required by the statute, into the circuit court, and it was not necessary that plaintiffs in error should plead the evidence in their exceptions, nor that the master should state, in overruling an objection, what particular evidence he regarded as relevant to his conclusion. Like the chancellor, he is presumed to have considered all the competent evidence tending to prove or disprove the fact in question, and if he should state that he based his finding upon some particular item of evidence parties would not be bound by it. If the record contained other material evidence, the parties would have the right to bring it to the attention of the court and have the benefit of it. Neither the chancellor nor a court of review is expected, in any case, to perform the duties of counsel, and grope or search through a record for evidence to support the claims of either party. That is the function of counsel representing the parties, who are expected to present to the court such evidence as tends on the one hand to sustain the report of the master and on the other hand to show its incorrectness. If an exception is specific and relates to a matter of fact it will be sufficient, and upon the hearing the counsel for the respective parties will have the right to present to the court, from the record, such evidence as tends to establish or disprove the fact. The record in this case does not show the Appellate Court, in rendering its judgment, acted upon any other view of the practice in such cases.

Simon Minchrod, complainant in the original bill, had been connected with the firm of Joseph Ullmann from the year 1868 until the close of 1885, and in the later years had been interested to the extent of twelve and one-half per cent of the net profits. The firm was largely engaged in the fur business, and had branches at St. Paul, Chicago, New York, and Leipsic, Germany. The Chicago branch was the principal one, to which reports were made from the others up to about the year 1883, when the accounts were transferred to the house at Leip-

sic and reports were made to that branch. Balance
sheets were made every month and each branch house
was furnished with a copy. Minchrod was the manager
of the Chicago house. In the summer of 1885 he became
sick with asthma and nervous difficulties, and so remained
during the latter part of the year. The contract between
him and the firm did not expire until January 1, 1887,
but Joseph Ullmann desired to close out the business at
Chicago, and came from Germany late in the fall of 1885
and talked with Minchrod upon that subject, desiring
him to go to New York and take charge of the house
there. This Minchrod declined to do, because he and
his family did not want to leave Chicago. He thereupon
negotiated with the firm of Beak & Bucher, engaged in
the fur business in Chicago, for the purchase of an inter-
est in that firm, and it was expected that he would make
such purchase. He then appeared by the books of the
firm of Joseph Ullmann to be indebted to that firm to
the amount of $12,250.40, but the accounts of the firm for
the year 1885 had not yet been adjusted. It was then
agreed that the note in question for $20,000, payable two
years after date, with interest at six per cent, should be
given and secured by mortgage. The mortgage was exe-
cuted November 27, 1885, and a few days before that time
Joseph Ullmann left for New York, and within a week
after arriving there left for Germany.

The claim of Simon Minchrod concerning this mort-
gage was, that Ullmann proposed that he should give it
and that Ullmann should take it to New York and sell it
and send him the money to go into business with Beak
& Bucher, and that he was then mentally incapable of
transacting business on account of his sickness. He tes-
tified in accordance with his bill. But it is evident from
his testimony that although he may have been physic-
ally weak at the time, his mind was unaffected.

Defendants in error contend that the mortgage was
given to secure what might be due from Minchrod to the

firm and for future advances, and the master and court so found. This conclusion seems to have been fully justified by the evidence. Joseph Ullmann was a friend of Minchrod and desired to aid him, and, as he would not go to New York, agreed to furnish money to enable him to go into business with Beak & Bucher. That, however, was not the only purpose of the mortgage, but it was designed also to secure whatever might be found to be due upon an accounting at the separation of Minchrod from the firm. It was then expected by all parties that the business for 1885 would very greatly reduce or perhaps wipe out Minchrod's indebtedness. That opinion was expressed by Ullmann at the time; but there is no justification for saying that it was not intended that whatever balance there was should be secured by this mortgage,—and that is conclusively shown, as against Simon Minchrod, by a receipt made at his solicitation and the agreements before referred to, signed by him. The note and mortgage were received by Emanuel S. Ullmann, and the following paper was given to Minchrod at his request:

"I agree that on the note made by Simon Minchrod to me, dated November 27, 1885, for $20,000, and secured by mortgage of even date therewith, interest shall run and be computed from the date of said note on such sums as said Minchrod is indebted to me at the present time, but that on such sum or sums of money as said Minchrod shall draw and receive from me subsequent hereto, interest shall run and be computed only from the time such sums shall be drawn, respectively, and that interest according to the face of said note shall be abated in accordance with the above agreement.                *pp.* Jos. ULLMANN,
                                    E. S. ULLMANN."

There was a purchase money mortgage on the premises, which then amounted to $3581.42, which was taken up by Ullmann and the money paid, and Minchrod drew a draft on Ullmann in New York for $500, which was paid. The parties made and signed an agreement December 1, 1885, showing the nature of the transaction and

the amount then understood to be due, and providing for a computation of interest on the amount so found due, and on sums advanced in the future, from the dates of such advancement. This is one of the agreements which Simon Minchrod asked to have set aside.

About the last of December, 1885, the firm of Beak & Bucher failed and confessed a judgment in favor of Joseph Ullmann, under which their stock was sold and was bought at sheriff's sale by said firm of Joseph Ullmann. By this failure the arrangement between Ullmann and Minchrod for the advancement of money to go into business with that firm was defeated, but it was carried out in another way by a sale of the stock to Minchrod at the sum of $30,000. He gave his notes for $20,000 of the purchase price, and the remaining $10,000 was agreed upon as having been advanced by Ullmann under the previous arrangement and secured by the mortgage. An agreement was then made reciting the transaction, and that agreement contained the following among other provisions: "It is understood and agreed that $10,000 of said purchase price is evidenced by a certain note dated November 27, 1885, for the sum of $20,000, made by said Minchrod to said Ullmann, and secured by a real estate mortgage, and that said $10,000 shall and is hereby applied on said note last mentioned, with like effect as though said Ullmann had paid and advanced thereon $10,000 in cash on the 12th day of January, 1886. It is hereby further agreed, that in case the said $10,000 added to the amount actually due on said $20,000 note January 12, 1886, shall make the indebtedness of said Minchrod on said $20,000 note more than $20,000, then said Minchrod agrees to give said Ullmann another note for such excess, if any, but that the time of maturity thereof shall be hereafter agreed on by the parties hereto." Although the agreement was not carried out in the particular way contemplated at the time the mortgage was made, on account of the unforeseen failure of Beak &

Bucher, it was carried out in another way, and advances made to an amount which considerably exceeded the mortgage, so that Minchrod gave notes for the balance. We are satisfied with the conclusion of the court that the mortgage was made to secure the amount that might be due from Minchrod to the firm and the future advances.

The claim of Hattie Minchrod in her cross-bill as to the note and mortgage was, that Ullmann agreed that if the mortgage was given he would raise $20,000 and send it to them to go into a new business. As we have already stated, it was undoubtedly a part of the arrangement that Ullmann should advance money to enable Simon Minchrod to go into business, but that arrangement could not be extended to cover the entire mortgage. It is evident that Mrs. Minchrod has exaggerated or overstated the arrangement. Ullmann could scarcely have agreed to send them $20,000, since the mortgage would not secure that amount after the payment of the purchase money mortgage. Her recollection must be at fault. And we think it clear that her cross-bill was not sustained.

The notary who took the acknowledgment, in his cross-examination said that he did not recollect asking Mrs. Minchrod whether she released her right of homestead, and did not think he did. Her counsel think she ought to have the benefit of this statement. In her cross-bill she admitted the making and acknowledging the mortgage, and if, under any circumstances, the certificate could be impeached in that way the evidence is not sufficient.

By the application of $10,000 in the purchase of the Beak & Bucher stock the mortgage account, as understood by the parties, was increased to something over $26,000, and notes were given by Minchrod, July 1, 1887, for the excess, in which was included interest on the mortgage account up to that date. The court disregarded the supposed settlement and opened the account, making the deductions recommended by the master. These deductions, which were very liberal in the light of the

evidence, amounted to $8367.96. When the account was opened and the alleged settlement disregarded the interest credit included in the notes for the excess was properly ignored.

About the only complaint made with reference to the account is, that the court ought to have allowed to Minchrod about $15,000, because Ullmann, in the fall of 1885, thought that the profits for that year would amount to about that sum. Ullmann did express that opinion about the time the mortgage was made, both to Minchrod and by letter to him; but according to the books Minchrod's share that year in the profits was about $1500. Having estimated the profits at $15,000, or expressed an opinion that they would reach that sum, it is insisted that he should account for that sum or else come into court and testify that they did not amount to that. This would be plainly unjust. Ullmann did not, in any sense, hold out to the Minchrods, or promise, that he would account for $15,000 as Minchrod's share of the profits, but, so far as appears, expressed what was then his honest belief as to what such profits would be, and it furnished no basis for any charge against him.

It is further insisted that this charge should be made on the ground that the books of the firm were not produced. The expert selected by Minchrod testified that there were some trial balances which should have been made that were not found, and some books which were ordinarily kept which were not contained among those produced; but the affidavit of Joseph Ullmann was filed, to the effect that all the books of the firm called for by the order of the court in his possession and control were furnished. There was nothing to justify the court in assuming that any account favorable to Minchrod had been secreted or kept from him.

It is contended that Emanuel S. Ullmann was not a proper party complainant to the cross-bill. There seems to be some confusion in his mind, when testifying, as to

the exact relation which he sustained, as a member of the firm of Joseph Ullmann, to the mortgage, having become a member of the firm after it was made. But he was a member when the mortgage was re-assigned to the firm by Ladenburg, Thalmann & Co., and we think he was a proper complainant.

Much complaint is made that evidence was admitted of the contracts of December 1, 1885, and January 12, 1886, for the reason that these instruments were not set out in the cross-bill. They had been set out in full in the original bill of Simon Minchrod, who averred that they were executed by the parties; and Mrs. Minchrod, in answering the cross-bill, averred that the facts and circumstances detailed in the original bill of Minchrod were substantially true. Both parties had averred the making of them. We think there was no error in admitting them.

The decree provided for an advertisement by publishing in a newspaper, and it is urged that it did not sufficiently designate the kind of newspaper required by statute. The notice was published in *The National Corporation Reporter*, which was declared to be a secular newspaper of general circulation in *Maass* v. *Hess*, 140 Ill. 576. That this is the same newspaper is shown by the certificate of publication.

Some objections are made to the proceedings after entry of the decree of foreclosure. Under this head it is objected that there is no *placitum* of the July term, 1895, at which the personal decree for a deficiency was entered. This is a mistake. The *placitum* at the beginning of the transcript is of that term.

It is also urged that the personal decree is invalid because it was not prayed for in the cross-bill. The proceedings were not purely *in rem* against the property, but the original cross-bill charged the personal liability of Simon Minchrod for the debt and prayed for a personal decree against him. The condition existed which authorized the entry of the decree.

It is further complained that the Appellate Court, finding that the chancellor had increased the amount due from Minchrod over the amount found by the master when no exceptions were taken by the complainant in the cross-bill, deducted the amount of such increase from the deficiency decree instead of reversing the entire decree. There was no reason for setting aside the sale of the property, and the effect of the order was to relieve Minchrod from the amount of the wrongful increase, which amounted to the same thing as taking it from the original decree. There was no error in the action of the Appellate Court in that regard.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*