## Inter-State Building and Loan Association v. Emma I. Ayers et al.

1. EQUITY PRACTICE—*Exceptions to a Master's Report Need Not Recite the Evidence.*—Exceptions to a master's report need not set out the evidence relied on, but will be held sufficient if they distinctly point out the specific matter of objection.

2. SAME—*Priority of Liens May be Adjusted on Foreclosure, Although no Cross-bills are Filed.*—Where a cross-bill filed by one of the parties to a suit to enforce a mechanic's lien, asks a sale of the property to pay a mortgage held by him, it is proper for the court to determine the priority of the liens upon the property and to decree their payment in the proper order, without any cross-bills by other lienholders, as a necessary incident to the relief sought by the mortgagee.

3. SAME—*Dismissal of Original Bill Held Not to Carry Answer with it, Where Cross-Bills Have Been Filed.*—A filed a bill against B and others to enforce a mechanic's lien; B answered claiming a prior lien, and C and D filed cross-bills setting up claims against the property. On a hearing the original bill was dismissed, and C, B and D were held to be entitled to liens in the order named. D appealed, claiming that the dis-

missal of the original bill carried B's answer with it, and that there was no pleading to support the decree in his favor. *Held*, that the position was not well taken.

4. SAME—*Leave to File Cross-bill Not Necessary Where Defendant has Answered.*—A defendant who has answered requires no leave to file a cross-bill, but may do so even after the cause has been referred to the master.

5. APPELLATE COURT PRACTICE—*Errors Not Argued Deemed Waived.* —In order to properly present assignments of error, a plaintiff in error must argue them in his opening brief, setting forth the points, reasons and authorities he relies upon to sustain them so as to give the defendant in error a fair opportunity to know his position and to reply thereto, and all errors not so argued will be regarded as waived.

6. SAME—*An Alleged Error, Not Argued, Held Waived.*—A plaintiff in error in his opening brief copied an exception to a master's report, an order denying a motion to strike certain evidence from the report, and his exception to such order, but did not state any reasons why the evidence should not have been considered, and cited no authority to support the exception. *Held*, that the alleged error was not properly presented, and that it must be treated as waived and an argument in its support in a reply brief disregarded.

7. SAME—*An Alleged Error, Not Argued, Held Waived.*—A plaintiff in error in his opening brief stated that he excepted to the action of the court in excluding from a decree of foreclosure certain dues allowed by the master in his favor, and that such action was error, "when the mortgage and bond in terms secured the dues." This was all that was said on the subject, and the court was left to search the mortgage and bond to ascertain what provision was relied upon, and to search the abstract for the ruling complained of. *Held*, that as the attention of the court was not called to the facts in evidence upon which the question arose, nor to the reasons which would make the ruling erroneous, the alleged error should be treated as waived.

8. MORTGAGES—*Effect of Notice of the Existence of.*—Priority among mortgagees depends not only upon the date of the recording of their mortgages, but also upon the knowledge they have of the true state of facts as to the title, and of the rights and equities of those who have not fixed their priority by recording their mortgages, and a subsequent mortgagee who has notice of a prior unrecorded mortgage is affected by his knowledge of it in the same way a prior record of the mortgage would affect him.

9. AGENCY—*The Relation Held to Exist.*—The court reviews the evidence, and concludes that the person who acted for the plaintiff in error in the negotiation of the loan held by it, was the agent of the plaintiff in error for the purposes of said loan, and that notice to him of a prior unrecorded mortgage was notice to the plaintiff in error.

10. SAME—*An Undiscovered Principal Bound.*—A contract of an agent binds his principal, though the fact of the agency and the name of the principal are not disclosed until after the contract is made.

11. PLEADINGS—*Notice of Lien May be Proved Under Pleading Claiming Priority.*—One of the parties to a suit to enforce a mechanic's lien, in his answers to the original bill and to a cross-bill filed by a mortgagee, and in a cross-bill of his own, claimed that he had a prior lien to every one else. On the trial he introduced a mortgage executed before, but recorded after the lien of the other mortgage attached to the property, and also evidence to show that the mortgagee therein had notice of his rights. *Held,* that the fact that such notice was not pleaded furnished no ground of complaint, and that it could properly be proved in support of the claim of priority.

12. EQUITY PLEADING—*An Answer to a Cross-bill May Refer to the Answer to the Original Bill Although Such Bill is Dismissed.*—A reference in an answer to a cross-bill, to matters stated in an answer to the original bill, permits a reference to such answer for the purpose of supporting a decree sustaining a mechanic's lien set up in the answer to the cross-bill, although the original bill is dismissed at the hearing.

13. MECHANIC'S LIENS—*Will Attach to an Equitable Interest, and to an After-acquired Legal Title.*—A person holding a contract with the owner of real estate for a warranty deed may subject his interest to a mechanic's lien, and upon the vendee acquiring legal title during the progress of the work the lien attaches to the entire title so vested in him.

14. SAME—*A Contract Made by a Husband Held Binding on His Wife.*—In a suit to enforce a mechanic's lien against property belonging to a wife, where the contract was made by her husband, the court reviews the evidence, and holds that the contract was binding on the wife.

15. SAME—*Naming Third Persons as Debtors with the Owner of the Property.*—The fact that a person claiming a mechanic's lien, in the statement filed as required by law, named other persons with the owner of the property as the persons from whom his demand is due, does not invalidate the statement nor defeat the lien.

16. SAME—*A Lien Held to Have Priority Over a Mortgage Under Act in Force in 1893.*—Under Sec. 17 of the mechanic's lien act, in force in 1893, the mortgage of plaintiff in error could not operate upon the buildings erected or materials furnished in this case until the lien in favor of the person doing the work or furnishing the materials was satisfied.

**Bill,** to enforce a mechanic's lien and cross-bills to foreclose mortgages. Error to the City Court of Aurora; the Hon. RUSSELL P. GOODWIN, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed September 20, 1897.

R. G. MONTONY and S. N. HOOVER, attorneys for plaintiff in error.

While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or

imputation of notice from the agent to the principal, in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating. Am. & Eng. Ency. of Law, Vol. I, 423; Nat. Life Ins. Co. v. Minch, 53 N. Y. 144; Dillaway v. Butler, 135 Mass. 479; Innerarity v. Merchants National Bank, 139 Mass. 332; Story on Agency, p. 140; Fulton Bank v. New York & Sharon Canal Co., 4 Paige, 127; Wells v. Am. Ex. Co., 44 Wis. 342; Congar v. Chicago N. W. Ry. Co., 24 Wis. 159; Meacham on Agency, Ed. 1889, Secs. 718, 719, 721, 723, 725, 729.

The contract under which the material was furnished must be with the owner of some legal or equitable interest, and that interest must exist at the time of making the contract. In this case a contract made with Francis E. Ayers will not support a lien on the property of Emma I. Ayers. Coleman's Mechanic's Liens, Sec. 110; Sisson v. Holcomb, 58 Mich. 635; Gaddis v. Leeson et al., 55 Ill. 83; Campbell v. Jacobson, 145 Ill. 389; Jones on Liens, Sec. 1259; Wendt v. Martin, 89 Ill. 139; Lauer v. Bandow, 43 Wis. 563; Jones v. Walker, 63 N. Y. 612; Paulsen v. Manske, 126 Ill. 76.

If a contract was made by an agent, such agency must be established as well as averred. Wilson v. Schuck, 5 Ill. App. 572. In this case the claimant for a lien has averred agency but has failed to show that such agency existed. Proctor v. Tows, 115 Ill. 138; McCarthy v. Carter, 49 Ill. 53; Franklin Savings Bank v. Taylor, 131 Ill. 376.

The burden is on the party with whom the contract is made to ascertain who owns the property on which improvements are to be made, and the extent or the authority of the pretended agent, before entering into a contract for furnishing the material. Proctor v. Tows, 115 Ill. 138; McCarthy v. Carter, 49 Ill. 53; Baxter v. Hutchings, 49 Ill. 116.

It is well settled that when the credit is given to the husband on his own account, there can be no lien enforced against his wife's land. Campbell v. Jacobson, 145 Ill. 389;

Little v. Vredenburg, 16 Ill. App. 189; McGraw v. Storke, 44 Ill. App. 311; Clement v. Newton, 78 Ill. 427; Wendt v. Martin, 89 Ill. 139; Geary v. Hennessy, 9 Ill. App. 17.

The enhanced value of the property by the improvements which the owner pays for, inures to the benefit of the mortgagee and not the mechanic or material man, and the improvements paid for by the money of the mortgagee, prior or subsequent to the mechanic's lien, inure to his benefit. Coleman Mechanic's Liens, Sec. 172; Clark et al. v. Moore et al., 64 Ill. 273.

Recognizing the rule to hold all improvements placed by the mortgagor on the premises as being embraced in and subject to the mortgage, is only carrying into the enforcement of the mechanic's lien law, the well known equity principle recognized in the following cases : Cable et al. v. Ellis et al., 120 Ill. 152; Ebelmesser v. Ebelmesser, 99 Ill. 541; Worth v. Worth, 84 Ill. 442.

ARTHUR M. BEAUPRE, attorney for defendant in error Henry Hafenrichter.

A corporation can not see or know anything except by the eyes or intelligence of its officers. Notice to the agent in a transaction must be notice to the principal, otherwise it would be in the power of any one, by employing an agent, to practice with impunity the grossest frauds. Factors' & T. Ins. Co. v. Marine Dry Dock Co., 31 La. Ann. 149; Downes v. Power, 2 Ball & Beaty, 491.

As against corporations there are peculiar and urgent reasons for a stringent enforcement of the general rule that knowledge acquired or notice received by an officer or agent, within the scope of the agency, is deemed notice to the principal, as a corporation can not see or know anything except by the intelligence of its officers. Birmingham Trust Co. v. Louisiana Nat. Bank, 99 Ala. 379.

Where the business of a company is such as to require it to be conducted through agents, notice to an agent in a matter in which he acted within the scope of his employment and in the usual course of the company's business will bind the company. Pontchartrain R. R. Co. v. Heirne, 2 La. Ann. 129.

Proof that a person has dealt with an agent of a corporation in good faith, within the scope of his apparent authority, and relied upon this apparent authority, will render the corporation liable for the act, whether the agent exceeded his authority or not; and in order to establish a defense it must be shown not only that the act of the agent was unauthorized, but also that the party dealing with the agent had notice thereof, or that he did not rely upon the apparent powers conferred upon the agent by the corporation. 17 Am. & Eng. Ency., 158, 159.

When a duty is imposed upon and intrusted to an agent by a corporation, notice to such agent of matters falling within his line of duty, is notice to the corporation. Sangamon Coal Min. Co. v. Wiggerhaus, 122 Ill. 279.

The rule that notice to an agent is notice to the principal, alike includes and applies to the positive information or knowledge obtained or possessed by an agent in the transaction, and to actual or constructive notice communicated to him therein. As a general rule notice to an agent who has conducted, or who has been active as a party to a transaction, is sufficient constructive notice to his principal in the matter. Fisher v. Crescent Ins. Co., 33 Fed. Rep. 544.

Notice of a prior incumbrance to an agent is notice to the principal. Astor v. Wells, 17 U. S. (4 Wheat.) 466.

Notice of an unrecorded deed to an attorney or agent is equivalent to notice to his principal. Dickerson v. Bowers, 42 N. J. Eq. 295.

The knowledge of the agent is knowledge of the principal. Hoover v. Wise, 91 U. S. 310; Fulton Bank v. New York & S. Canal Co., 4 Paige, 127; United States Bank v. Davis, 2 Hill, 451; McGurk v. Metropolitan Life Insurance Co. (Conn.), 1 L. R. A. 563.

Where an agent comes to the knowledge of a fact while he is concerned for the principal, this operates as constructive notice to the principal himself. Ingalls v. Morgan, 10 N. Y. 185; Jeffrey v. Bigelow, 13 Wend. 518; Norris v. Le-Neve, 3 Atk. 26; Brotherton v. Hatt, 2 Vern. 574; Jennings v. Moore, Ibid. 609; Downes v. Power, 2 Ball & B. 491.

A principal is chargeable with all the knowledge the agent possesses in the transaction of the business he has in charge.   Myers v. Mutual Life Ins. Co., 32 Hun, 327.

When the agent's employment is of a continuous character, and the duty rests upon him to communicate information acquired by him to his principal, his knowledge, however and wherever acquired, becomes the knowledge of the principal, and the latter is bound thereby.   Village of Port Jervis v. First Nat. Bank, 96 N. Y. 559.

Knowledge by the defendant's agent is just as effectual to charge the defendant with such knowledge, as though he actually possessed it.   North v. House, 6 Nat. Bank Regr. 365; Mayer v. Hermann, 10 Blatch. 256.

The doctrine now seems to be established that if the agent at the time of effecting a purchase has knowledge of any prior lien, trust or fraud affecting the property, his principal is affected thereby.   The general rule that a principal is bound by the knowledge of his agent is based on the principle of law that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject-matter of negotiation, and the presumption that he will perform that duty.   The Distilled Spirits, 11 Wall. 366. Notice to the agent of a purchaser of land, of the equitable rights of a third person in the same, the agent having been employed in respect of, and participated in the transaction, is notice to the purchaser.   Jackson v. Horton, 126 Ill. 566; Doyle v. Teas, 4 Scam. 202;  Rector v. Rector, 8 Ill. 119.

On the general proposition see also, 1 Am. & Eng. Ency. of Law (2d Ed.), 1144 and cases cited in note 1.

The rule holding the principal liable for notice given to an agent, applies to agents of corporations as well as to those of other principals.   Waynesville Nat. Bank v. Irons, 8 Fed. Rep. 1;  Farmers, etc., Bank v. Payne, 25 Conn. 449; Factors' and T. Ins. Co. v. Marine Dry Dock Co., 31 La. Ann. 149;  Nat. Security Bank v. Cushman, 121 Mass. 490; Cragie v. Hadley, 99 N. Y. 131;  Wilson v. McCullough, 23 Pa. St. 440;  Hart v. Farmers Bank, 33 Vt. 252;  Nashville, etc., v. Elliott, 1 Coldw. (Tenn.) 619;  Hayward v. Nat. Ins. Co., 52 Mo. 191;  Mihills Mfg. Co. v. Camp, 49 Wis. 130.

A corporation is liable to the same extent and under the same circumstances as a natural person for the consequences of its wrongful acts; and there can be no doubt that if the agents employed by it conduct themselves fraudulently, so that if they had been acting for private employers, the persons for whom they were acting would have been affected by their fraud, the same principle must prevail when the principal is a corporation. New York & N. H. R. R. v. Schuyler, 34 N. Y. 50-51; Ranger v. Great Western Ry. Co., 5 House of Lords Cases, 86.

It is the settled rule in England, in cases at law, and in America, both at law and in equity, that a corporation is responsible for the frauds of its agents when acting within the powers of the corporation, and within the scope of his agency, precisely as a natural person is. 5 Thompson's Corp., Sec. 6321, and note 3 and cases cited.

A special authority to commit the fraudulent act is not necessary to make the corporation answerable for it. It is enough that the agent had authority to transact the business of the corporation, in the course of which he committed the fraud. Ibid., Sec. 6322.

The association is liable to third parties for whatever the agent does or says, whatever contracts, representations or admissions he makes, whatever negligence he is guilty of, and whatever fraud or wrong he commits, provided the agent acts within the scope of his apparent authority. Thompson on Building Associations, Sec. 3.

A principal is liable to third persons for misfeasances, negligence and omissions of duty of his agent, leaving to him his remedy against the agent. And such liability extends to private corporations. Story on Agency (8th Ed.), 400, 401; Taylor v. Taylor, 20 Ill. 650; Angell and Ames on Corp. 364; Evans' Prin. & Agent, 470; Prairie, etc., Building Association v. Gorrie, 64 Ill. App. 325; U. S. Bank v. Davis, 2 Hill, 451.

The court will not wander at large into the evidence, and therefore either party who may wish to object before the master and except before the court, to the allowance or dis-

allowance of any item, should require the master to state the evidence and reasons upon which he allows or disallows that item.   Heffron v. Gore, 40 Ill. App. 257;  Brown v. McKay, 51 Ill. App. 295.

If either party is dissatisfied with the master's report, exceptions may be filed thereto; if the exceptions be to findings in fact, the evidence as to such facts should be set forth or pointed out with such directness that the court may readily find the same without searching through the entire record.   Brown v. McKay, 51 Ill. App. 295.

Exceptions are to be regarded so far only as they are supported by the special statements of the master, or by the evidence which ought to be brought before the court by reference to the particular testimony upon which the exception relies.   The chancellor would have been justified in overruling the exception to the master's conclusions upon the facts, for the reason alone that the particular evidence relied upon to sustain such exceptions was not pointed out with such definiteness that it could be easily found without searching either through the mass of evidence or unnecessarily through any part thereof.   Hodson v. Eugene Glass Co., 54 Ill. App. 248;  Friedman v. Schoengen, 59 Ill. App. 376;  Wolcott v. Lake View B. & L. Ass'n, 59 Ill. App. 415;  Springer v. Kroeschell, 59 Ill. App. 434;  Rockwell v. O'Brien-Green Co., 62 Ill. App. 293.

Upon this record the court can not review the conclusions of fact, because the appellant did not take steps to have the master state upon what evidence he found the conclusions, respectively, to which objections were made and exceptions taken.   Rimmer v. O'Brien-Green Co., 64 Ill. App. 106;  McMannomy v. Walker, 63 Ill. App. 259;  Prairie State L. & B. Ass'n v. Nubling, 64 Ill. App. 330;  United Shirt & Collar Co. v. Pitzile, 66 Ill. App. 477.

ALDRICH, WINSLOW & WORCESTER, attorneys for defendant in error Laurens Hull.

Errors which are not insisted upon in the argument must be considered abandoned.   Griffin v. Larned, 111 Ill. 432;

Wabash, St. L. & P. Ry. Co. v. McDougal, 113 Ill. 605; Schmit v. Devine, 63 Ill. App. 289; Cook v. Moulton, 59 Ill. App. 428.

When errors are not insisted upon by appellant in his opening brief, it is too late to present them in a reply brief. A practice of this kind would be very unfair to appellee, and would deprive the court of the benefit of any argument appellee might have made if the objection had been raised at the proper time. Schumacher v. Bell, 164 Ill. 181; Pratt v. Trustees, 93 Ill. 475; Illinois Central R. R. Co. v. Heisner, 45 Ill. App. 143.

A vendee in possession of a lot under contract of purchase has such an interest therein as will support the lien of a mechanic for work done and materials furnished prior to the forfeiture of a contract. Henderson v. Connelly, 23 Ill. App. 601; S. C., 123 Ill. 98.

The word "owner" in the statute includes the owner in equity as well as at law. It covers one who has the equitable title. Phillips on Mechanics' Liens, Secs. 67, 188; Atkins v. Little, 17 Minn. 342; Meyer Bros. Drug Co. v. Brown, 46 Kan. 543; Rollin v. Cross, 45 N. Y. 766; Springer v. Kroeschell, 161 Ill. 358.

The law is familiar that when the owner of property holds out another or allows him to appear as the owner of, or as having full power of disposition over the property, and innocent parties are thus led into dealing with such apparent owner, or person having the apparent power of disposition, they will be protected. Bigelow on Estoppel, 468; Higgins v. Ferguson, 14 Ill. 269; Donaldson v. Holmes, 23 Ill. 85; Schwartz v. Saunders, 46 Ill. 18; Bruck v. Bowermaster, 36 Ill. App. 510.

The principal may, when discovered, be held responsible, although concealed by the agent, and the agent alone trusted. The agency and defendant's liability must depend upon the fact, rather than upon plaintiff's knowledge of the fact. Story on Agency, Secs. 291–446; Dykers v. Townsend, 24 N. Y. 57; Wiener v. Whipple, 53 Wis. 298; Jessup v. Steurer, 75 N. Y. 613; Hill v. Miller, 76 N. Y. 32; Beymer

v. Bonsall, 79 Pa. St. 298; Malcolm v. Lyon, 19 N. Y. S. 210; Benjamin on Sales, Sec. 219, note 21 and cases cited; Boland v. N. W. Fuel Co., 34 Fed. Rep. 523; Polk v. Meadow Spring D. Co., 20 Fed. Rep. 37; 1 Am. & Eng. Ency. (2d Ed.), 1139 and cases cited; Thompson v. Davenport, 3 Smith's Leading Cases (Ninth Am. Edition), 1632, and cases in the English and American notes.

MR. JUSTICE DIBELL DELIVERED THE OPINION OF THE COURT.

This cause originated in a bill for a mechanic's lien upon lot 3 of Burdsall and Bruce's Addition to Aurora, filed by C. Solfisburg, against Emma I. Ayers, the owner thereof, and others, for materials used in erecting a building for "flats" on said lot. Many mechanics and material men filed answers claiming liens. Plaintiff in error answered, claiming a mortgage lien for the principal sum of $6,000, with interest and other charges superior to all other liens, and filed a cross-bill for the foreclosure of said mortgage. Henry Hafenrichter answered, claiming a mortgage lien for the principal sum of $1,850, with interest, prior to all other liens, and filed a cross-bill for the foreclosure of said mortgage. Issues were joined, and there was reference to the master to take proofs and state an account between the parties. The master heard proofs and prepared a report, to which numerous objections were filed, and by the master overruled; exceptions were filed to the master's rulings, and there was a hearing thereon in the Circuit Court, where two exceptions were sustained, and all others were overruled, and there was a decree accordingly. By said decree Hafenrichter was given a first lien under his mortgage; Laurens Hull, trading as the Aurora Lumber Company, was given a second lien for materials furnished; plaintiff in error was given a third lien under its mortgage; numerous other mechanics and material men were given a fourth lien *pro rata;* and certain others who had asserted liens, including C. Solfisburg, were denied a lien. The association brings the case here by writ of error, and has assigned errors upon the record. No cross-errors have been assigned, and the rights of those

who. received a lien fourth in order and of those who were denied a lien, are not involved. Mrs. Ayers does not question the order of the liens established by the decree. There is also no controversy between Hafenrichter and Hull. The questions are, whether Hafenrichter was entitled to priority over plaintiff in error, and whether Hull was entitled to any lien, and if so, whether he was entitled to priority over plaintiff in error.

Mrs. Ayers is the daughter of Hafenrichter, and the wife of Francis E. Ayers. J. H. Jenks, at the time of the events here litigated, was the secretary of the advisory board of plaintiff in error at Aurora. Hafenrichter received a deed of the property September 2, 1892, and afterward made some arrangement for selling it to his daughter, and she went into possession, and her husband made contracts with mechanics and material men for the erection of this building. After the work on the building had progressed some considerable time, Hafenrichter, on May 20, 1893, conveyed the lot to Mrs. Ayers for the consideration of $2,200, and she paid him $350 in cash, and executed with her husband a note of that date for $1,850, due in six months after date, with interest at six per cent per annum for the balance of the purchase money, and also a mortgage upon the lot securing said note. Hafenrichter handed the mortgage to Ayers that day with directions to get it recorded, and supposed till long after that it had been so recorded. As the result of a conference between Ayers and Jenks, Ayers kept the Hafenrichter mortgage off the record till Mrs. Ayers' application for a loan from plaintiff in error had been granted, the money paid, and the mortgage to the association recorded. Jenks placed the association's mortgage on record July 8, 1893, and Ayers placed the Hafenrichter mortgage on record July 11, 1893. Thus the mortgage first executed was last recorded.

Defendants in error, Hafenrichter and Hull, in their respective briefs, argue that the objections to the master's report and exceptions to his rulings were fatally defective in not reciting, or at least pointing out, the evidence upon

which such objections and exceptions were based. The objections in question were precise, pointed out the specific matter of objection, and were one hundred and eighty-five in number. The exceptions to the master's ruling were the same in number, and were equally precise. Our Supreme Court, in Hayes v. Hammond, 162 Ill. 133, and Minchrod v. Ullman, 163 Ill. 25, settled the rule that it is not necessary to set out the evidence relied upon, and that these objections and exceptions were sufficient in form.

The assignments of error are sufficiently broad to question the action of the court upon each exception the association filed. In order to properly present these assignments, however, plaintiff in error was required to argue them in its opening brief, setting forth the points and reasons and authorities it relied upon to sustain them, so as to give defendant in error a fair opportunity to know its position and to reply thereto. Errors assigned but not argued in the opening brief of plaintiff in error, must be regarded as waived. Wabash, St. L. & P. Ry. Co. v. McDougal, 118 Ill. 229; Harris v. Shebek, 151 Ill. 287; Schumacher v. Bell, 164 Ill. 181; I. C. R. R. Co. v. Heisner, 45 Ill. App. 143. One of plaintiffs in error's exceptions was that the master erred in considering certain proof taken before him February 5 and 6, 1896. In its opening brief and argument it copied said exception, and the order of the court below denying the motion to strike said proofs out of the master's report and its exception to said order, but did not, in its opening brief, state any reasons why said evidence should not have been considered, or why it should have been stricken out, and cited no authorities to support the exception. It did nothing in its opening brief but copy the exception and the order. This gave defendants in error no chance to know the grounds on which plaintiff in error would seek to sustain the exception, and no opportunity to answer any arguments which could be urged in support of said exception. In its reply brief, plaintiff in error argues said exception at length. We think this course was not just to defendants in error, nor to this court, which is thereby deprived of any answer they

might have made to the argument first advanced in the reply brief. We hold the failure to argue the question in the opening brief should be treated as a waiver of the supposed error. We think, however, there was no error in considering said testimony. When it was heard the proofs had not been closed. There had been much delay because of the inability of plaintiff in error to produce its witness, J. H. Jenks, for cross-examination, owing to his sickness. Plaintiff in error was present by counsel when said testimony was heard, and had an opportunity to cross-examine, and could have asked for time to produce further testimony if it desired. The matter was submitted to the court below, and we think it acted within its discretion in allowing the testimony to stand.

Plaintiff in error, in its opening brief, states that it excepted to the action of the court in excluding from the decree $1,032 of dues allowed by the master in its favor, and that this was error, "when the mortgage and bond in terms secured the dues." Plaintiff in error devotes but a single sentence to the subject, and the words just quoted are all the argument it makes upon this assignment of error. We are left to search the mortgage and bond to ascertain upon what provisions therein the association relies, and to search the abstract to find where the ruling complained of is set forth therein. Our attention is not called to the facts in evidence upon which said question of dues is based, nor to the reasons which would make the ruling erroneous. We conclude this assignment of error should be treated as waived.

When Hafenrichter's mortgage was placed in the hands of Ayers to file it for record, he immediately consulted Jenks, and by the suggestion and procurement of the latter, Ayers withheld it from record till after the plaintiff in error's mortgage was, at a later date, executed, sent to Bloomington, accepted, returned from Bloomington with the money, and recorded. Plaintiff in error, in its opening brief, admits the acts of Jenks in this matter, in the following language: "There can be no question that Francis H. Ayers and

J. H. Jenks colluded together to withhold Hafenrichter's mortgage from record until after the loan was made, and the mortgage to the building and loan association was filed for record." This admission was repeated in said brief, and makes a consideration of the details of the evidence on that subject unnecessary. " Subsequent purchasers who have notice of a prior unrecorded mortgage, are affected by their knowledge of it in the same way that the prior record of such mortgage would affect them." " Priority among mortgagees and grantees depends not only upon the date of their deeds and the date of their record, but also upon the knowledge they have of the true state of facts as to the title, and of the rights and equities of those who have not fixed their priority by duly recording their deeds." 1 Jones on Mortgages, Sec. 572; Marshall v. Fisk, 6 Mass. 24; Dole v. Thurlow, 12 Metc. 157; R. S., 1874, c. 30, Sec. 30. It is proved in this case that after Mrs. Ayers had made this application to plaintiff in error for a loan, and about a month and a half before the mortgage to plaintiff in error was executed and delivered, Ayers told Jenks that Mrs. Ayers owed Hafenrichter $1,850 for purchase money of this property, and that Hafenrichter held a mortgage on the property to secure said debt. If notice to Jenks was notice to plaintiff in error, then the rule above stated applies to this case, and Hafenrichter was entitled to the prior lien he received. If notice to Jenks was not notice to plaintiff in error, then the decree was erroneous in giving Hafenrichter priority.

Plaintiff in error was organized in 1889 under our statute relative to building associations. Section 9 of article 8 of its by-laws provides that the board of directors may appoint advisory boards to such an extent and at such times as it may deem best. "They shall advise with the board of directors on important topics whenever called upon to do so, and shall furnish said directors with such information relating to the matters of the association in their particular localities as they may from time to time require." Article 12 of said by-laws provides that each advisory board shall

consist of not less than five members, who shall elect a president, vice-president, secretary and treasurer, and may elect them from members of the association who are not members of the advisory board.    Bond is required from the secretary and treasurer.    Section 4 of said article requires that all monthly dues to the association shall be paid to the treasurer of the advisory board, and by him remitted to the secretary of the association at Bloomington.    Section 5 of said article provides that applications for shares shall be made by or through the secretary of the advisory board, and forwarded by him to the secretary of the association. And section 6 requires members wishing loans to fill blanks required by the association, and present them to the advisory board for action, and the advisory board will forward them to the association.

Plaintiff in error organized an advisory board at Aurora. J. H. Jenks was secretary and apparently treasurer thereof during the time covered by the events here in controversy. Mrs. Ayers and her husband applied to the association through Jenks for stock and for the loan.    He secured the issue of stock to Ayers, and its transfer to Mrs. Ayers when he discovered an error had been made as to the person in whose name the land was held.    Jenks transmitted the application to the home office.    Mrs. Ayers and her husband executed the bond and mortgage in his presence.    The association sent the draft for nearly $6,000 to Jenks; he caused Mrs. Ayers to indorse it on the back and return it to him, and he deposited it in the bank, and collected it and held the money, took out of it dues, etc., owing to the association, and paid the rest of the money out on orders of Ayers and wife as the building progressed.    Although plaintiff in error put in evidence the by-laws, it also proved orally by Jenks, its witness, that his duties as secretary of the local board were to solicit stock, make loans, collect dues and interest, do the general work of the secretary and treasurer of the local board at Aurora, keep the accounts of the association at Aurora, and to collect dues, premiums and fees of the stockholders of the association at Aurora.    Jenks paid off

the prior Butler mortgage previously resting on the property, recorded its release, and recorded plaintiff in error's mortgage. It was only by Jenks the association could prove what had actually been paid by Mrs. Ayers upon the dues, interest and premium. No one else connected with the association knew, except by his books and reports. Counsel for the association in interrogating Jenks as its witness, assumed he had been "acting as agent for the Inter-State Building & Loan Association in Aurora," and he so assumed in his answers. Jenks was the officer of the association who retained possession of the stock upon which the loan was made, as the bond and mortgage recited. Jenks testified "we" had been to the records to ascertain the state of the title, implying he performed that office for plaintiff in error. Plaintiff in error proved what statements Ayers made to Jenks as to the condition of the title, evidently on the theory that a statement by Ayers to Jenks that the property was clear, was a statement to the association. Marian Hatch, called as a witness by the association, testified she succeeded Jenks as agent of the association, and had in her possession the ledger kept by Jenks containing the accounts of the payments made by him out of the proceeds of this loan to material men and laborers on the building, on the orders of Mr. and Mrs. Ayers. It is evident this was a book belonging to the association in which Jenks kept its accounts at Aurora. The abstract of title was examined and passed upon by the lawyer of the association at Bloomington, and perhaps the mortgage was drawn there; but so far as appears from the evidence every other act on behalf of the association in regard to this loan, was performed by Jenks for it. Ayers and wife did not see or deal with any other officer of the association.

The argument of plaintiff in error on the subject of notice carried to its legitimate conclusion, produces the result that the association would not be bound by notice of a prior unrecorded mortgage where said notice was given to any of its officers except the lawyer whom it hired to examine abstracts of title. We do not think it could relieve itself

of the effect of notice to its officers by hiring a lawyer to advise it whether the proposed borrower had a good title. It is argued Jenks was the agent of Ayers and wife because they paid him $25 to go to Bloomington and try to hurry up the loan, which was being delayed. Whether this $25 more than paid his traveling expenses is not disclosed, but he evidently went because he was the agent of the association. It is claimed Jenks was agent of Mrs. Ayers because she paid him $45 for issuing stock, but the testimony of Jenks shows the rules allowed the secretary of the advisory board a fee of one dollar for each share of stock issued, and the sixty shares issued to Mrs. Ayers entitled Jenks to a fee of $60, but he agreed to take $45 therefor. This, therefore, was a fee paid to him as an officer of plaintiff in error. It is insisted Jenks acted as the agent of Mrs. Ayers in paying out the proceeds of the loan to her material men and laborers on the order of her husband or herself as the building progressed. This position is untenable. A building association furnishing money to put up a building on the premises mortgaged to it, which building is usually an important part of its security for the payment of the loan, does not place the avails of the loan in the hands of the mortgagor, and leave it to his discretion whether he will put the money into the building or use it elsewhere for his other purposes. Such a course would be suicidal to the association. It requires the borrower to permit it to retain the money, and it pays out the money on the order of the borrower, and thus sees that the proceeds of the loan are applied to the building on the real estate given it as security. Jenks performed that responsible office for plaintiff in error. We hold he was an agent of the association for the purposes of this loan, and that notice to him of the prior unrecorded Hafenrichter purchase money mortgage for $1,850 was notice to the association. To hold otherwise would, it seems to us, practically relieve plaintiff in error from the effect of the doctrine of notice as to loans made by it through its advisory boards at places other than Bloomington, where its chief officers reside. Jenks no doubt

· intended by his action in this matter to give his association priority over the Hafenrichter mortgage, and was endeavoring to act for the benefit of his principal, the association. It follows that we are of opinion plaintiff in error, through its agent, Jenks, had full notice of the unrecorded mortgage.

But it is argued Hafenrichter did not in his pleadings charge notice to plaintiff in error of the unrecorded mortgage. He did, however, in his answer to the original bill and to the cross-bill of plaintiff in error, and in his own cross-bill, charge he had a lien prior to every one else, and this notice to plaintiff in error, through its agent, Jenks, is one item of the proof by which he seeks to establish that priority, and the rule is familiar that a party need not plead his evidence. It is said Hafenrichter filed his cross-bill the day after the reference to the master, without leave of court, and that it should not have been treated as included in the reference. A defendant who has answered requires no leave to file a cross-bill, and it is not too late to file a cross-bill after a reference has been made; but this cross-bill was wholly unnecessary, and the decree does not depend upon it. In each of his answers Hafenrichter set up his mortgage, and averred it was a prior lien to all others. The cross-bill of plaintiff in error asked a sale of the property to pay its mortgage. It was indispensable to that relief that the court should establish the order of liens from the evidence, and direct their payment in the order of their priority out of the proceeds of the sale. Dillman v. Will County National Bank, 138 Ill. 282. As the proofs stand, Hafenrichter must have been paid first out of the proceeds of a sale under the association's cross-bill, even if he had filed no cross-bill.

It is asserted Hull was not entitled to the lien given him, because Mrs. Ayers had no title when he made the contract to furnish materials for said building, and therefore his contract was not with the owner. Ayers testified the subject of the conveyance of this property from Hafenrichter to Mrs. Ayers of May 20, 1893, had been

considered by Hafenrichter and himself before that date; that along about the first of March or last of February, 1893, a deal was made by which it was understood Mrs. Ayers was to be the owner of the premises; and that the transactions between them on May 20th, the deed to Mrs. Ayers, and the note and mortgage back to Hafenrichter, were the consummation of that previous contract. The questions put to Ayers on this subject were leading, but they were not objected to, and the facts so established were not contradicted. We think this sufficient *prima facie* proof that there was a contract between the parties about the last of February or first of March, 1893, by which Hafenrichter was to convey these premises to Mrs. Ayers at the time, in the manner, and for the consideration indicated by the conveyance afterward made to her. A cottage standing on the premises was moved off, and Mrs. Ayers built a temporary structure, or shanty, on the back of the lot, and she with her husband moved into it, and took possession, and lived there until the new building was so far completed that they could move into a part of it. The evidence does not show just when she built and moved into the shanty, but it is a fair inference from the proofs that she occupied it during the entire time the flats were being erected. Hull testifies the arrangement for lumber was made in the forepart of April, 1893, and that he began delivering lumber April 13, 1893. We think the proof shows that at the time the arrangement was made with Hull for the lumber, Mrs. Ayers had a contract with Hafenrichter, the owner, for a warranty deed of the property, and that it is probable from the evidence she was then living upon the premises. Paulsen v. Manske, 126 Ill. 72, is conclusive that such an interest as Mrs. Ayers had would support a mechanic's lien, and inasmuch as the vendor's title might, under certain circumstances, be also subjected to a lien for labor and materials placed upon the land by the vendee (Henderson v. Connelly, 123 Ill. 98), we see no reason why, upon the vendee acquiring the legal title during the progress of the building, the lien should not attach to the entire title

so vested in her.     Springer v. Kroeschell, 161 Ill. 358;  Phoenix M. L. Ins. Co. v. Batchen, 6 Ill. App. 621.

It is said Hull made his contract with Ayers and not with Mrs. Ayers, and therefore did not make it with the owner, and hence has no lien.     The evidence on this subject is too voluminous to be repeated.     By the testimony of some seventeen witnesses it was clearly proved Ayers was in fact his wife's general agent in the construction of these flats; that he made most of the contracts with mechanics and material men, disclosing his agency to some and not to others; that his wife told various parties in interest her husband was her agent in the construction of the building, and that she left everything to him in regard to the building and the payments; that she lived on the rear of the premises all the time the work was going on; that those delivering the material and doing the work saw her there daily, and frequently conversed with her about the work, and that she frequently gave orders to them in relation to the work—in regard to the fixtures, trimmings and mouldings.     She examined the work and caused some changes to be made. Her directions when given were obeyed.     She was present when her husband made some of the contracts.     One contractor delivered most of his goods directly to her.     It is clear to us that the contracts of Ayers for this building were binding upon his wife.     Bruck v. Bowermaster, 36 Ill. App. 510.     Hull did not inquire and did not know who owned the land until he had delivered about half of the lumber.     He then learned of Mrs. Ayers' title and had a talk with her, and asked her if the lumber was all right, and she said it was.     We think this contract of the agent bound the principal, though the fact of his agency and the name of his principal were not disclosed till later.     It is the general rule that an undisclosed principal is liable when discovered.

Hull charged this account on his books to both Ayers and Mrs. Ayers, and in filing his claim for lien named Hafenrichter with them as the persons from whom his demand was due.     We think this does not militate against the lien.     His pleadings claimed he made the contract with Mrs.

Ayers, through her agent, Ayers, and the proof sustained the allegation. It may be he could also hold Ayers liable for failure to disclose his principal; it may be there were some equitable considerations which would have subjected the land to the lien in the hands of Hafenrichter, if he had not conveyed it; but the material question now under consideration is whether Hull has a lien upon the lot as against Mrs. Ayers, and we think he has. Errors in respect to matters not required to be included in the statement of lien do not invalidate the statement, nor defeat the lien. Culver v. Schroth, 153 Ill. 437; Hayes v. Hammond, 162 Ill. 133.

It is suggested that as Hull did not file a cross-bill, and as the bill of Solfisburg for a mechanic's lien was dismissed by the final decree, therefore Hull's answer to Solfisburg's bill, in which answer Hull claimed a lien, also fell, and that Hull has no pleading to support a lien in his favor. We do not think this position well taken; but Hull had other pleadings. In his answer to the cross-bill of plaintiff in error, Hull alleges " that his claim herein is for materials furnished, as set forth in his answer herein to the original bill of complaint herein, and that he is entitled to a lien upon the premises therein mentioned, and that his lien is superior to that of said loan company, and to any claim or demand whatsoever said company may have, if any, upon the premises." We think this reference to his answer to the original bill permits a reference thereto for the purpose of supporting his lien. In his answer to the Hafenrichter cross-bill he again set out his claim of lien in detail.

Plaintiff in error by its exceptions claims its mortgage should have been held prior to all other liens to an amount equal to the value of the said premises on July 1, 1893; also to an amount equal to the payments made from the proceeds of said loan or otherwise for the erection of the improvements on said premises; also to the extent to which the proceeds of its mortgage were applied in the improvement of said premises; also to the extent of the money paid by Mrs. Ayers and husband in the improvement of said premises, from whatever source derived. Hull made the arrange-

ment with Ayers early in April, 1893.   By it Hull was
required to furnish all the lumber needed for the building,
and at the same figures he would have given if the whole
bill had been furnished for him to figure on in advance.
He began furnishing lumber on the contract April 13.   His
lien attached to the land at the making of the contract and
to the building as it progressed.   The mortgage to the asso-
ciation was dated July 1, acknowledged July 4, and recorded
July 8, 1893, and as against Hull did not become a lien till
the latter date.   Under section 17 of the mechanic's lien act,
in force in 1893, this mortgage could not operate upon the
building erected or materials furnished until the lien in
favor of the person doing the work or furnishing the
materials was satisfied.   The association introduced proof
of the value of the premises on July 11, 1893, but that
was being daily increased by the addition of labor and
material, and its value on July 8, 1893, was not shown.
No proof was offered by plaintiff in error as to the value
of the land separate from the building, nor as to the extent
to which its loan as applied increased the value of the
property, nor as to the extent to which labor and material
furnished by others than Hull increased the value of the
property, nor any proof which would enable the court, under
the statute then in force, to give plaintiff in error any lien
upon any part of the premises until Hull was paid.

We have considered all the errors assigned which were
argued in the opening brief of plaintiff in error, and are of
opinion that the decree of the court below has not thereby
been successfully assailed.   It will therefore be affirmed.