CHRISTIAN THIELMAN *et al.*

*v.*

CHRISTIAN CARR *et al.*

| 75 | 385 |
| 121 | 581 |
| 122 | 496 |
| 22a | 77 |
| 75 | 385 |
| 30a | 586 |
| 75 | 385 |
| 36a | 257 |
| 75 | 385 |
| 148 | 171 |
| 75 | 385 |
| 160 | 117 |
| 161 | 360 |
| 75 | 385 |
| 64a | 365 |
| 75 | 385 |
| 67a | 521 |
| 75 | 385 |
| 85a | 201 |
| 75 | 385 |
| 104a | 119 |

1. CHANCERY PRACTICE — *consolidation of causes.* While the general chancery practice is opposed to the consolidation of cases having different parties and involving different rights, yet such a practice is proper when the litigation grows out of the enforcement of mechanics' liens under the statute, and may be necessary, in some cases, to enable the court to settle and adjust the rights of the various lien holders, or those claiming liens.

2. SAME — *defendant may make his answer a cross-bill.* The defendant in a chancery suit may, after fully answering the complainant's bill, state new matter, entitling him to affirmative relief, as he would in a cross-bill, and pray, in conclusion, for the relief sought, or, in other words, may make his answer a cross-bill as well as an answer, and have affirmative relief thereon.

3. SAME — *cross-bill not necessary in mechanics' lien case.* In proceedings to declare and enforce mechanics' liens under the statute, it is not necessary for a defendant who claims a lien to file a formal cross-bill to entitle him to relief. The proceeding under the statute is to subject the property, not to the payment of the petitioner's claim alone, but to make it a fund for the satisfaction of all the liens established; and a party, under his answer, whether brought into court by service, or who intervenes, is required to prove his claim, and, when proven, he is entitled to share in the fund.

49—75TH ILL.

4. ABATEMENT — *pendency of prior suit.* Where parties who had commenced suits to enforce liens under the lien law, during the pendency of their suits intervened in a suit in another court, brought to enforce a mechanics' lien, it was *held,* that a demurrer was properly sustained to a plea setting up the pendency of their suits, as to allow such a plea would be to defeat the statute requiring all persons in interest to be parties, and, in many cases, be productive of great delay. Their prior suits would be dismissed after such intervention, on application.

5. MECHANICS' LIEN — *transfer and consolidation of causes.* Where several suits are brought in different courts in the same county, under the mechanics' lien law, for the enforcement of different liens on the same property, by different parties, the better practice would be for the one court to transfer its causes to the other, so that they can all be consolidated and tried together. This should be done upon a simple showing of the facts.

6. SAME — *contract need not be for a definite amount.* In a proceeding for a mechanics' lien, it was objected that a material-man was not entitled to a lien because he made no agreement with the owner of the building for a specified amount of material, but that it was obtained as required for use in the progress of the building: *Held,* that the contract was embraced in the act of 1861, and he was entitled to a lien.

7. SAME — *priority over incumbrance by deed of trust.* A deed of trust made and delivered before, but not recorded until after, the making of contracts for the building of a house on the premises and materials therefor, will not have priority over the lien of the parties making such contracts, but the lien of the latter will take precedence of the lien created by the deed of trust.

8. REAL ESTATE — *furnace in building.* While stoves put up in a building are personalty, yet a furnace placed in the building to remain there permanently is regarded as a part of the realty, as much so as a steam engine in a mill or factory. Whether this would apply to a lessee is not decided.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a petition filed by Christian Carr against Thielman, L. A. Nichols, J. H. Clayburn, H. P. Caldwell, Levi Wing and L. J. Clark, to have a mechanic's lien declared and enforced. The petition was subsequently amended, making George Burg, Hugh McClincy, Otto E. Wolf, Adolf W. Wolf, John Runge, Hugo Kotchmann, Carl Lieber, E. K. Hubbard, E. P.

Wood, Charles Fitzsimons, Moses A. Thayer, C. A. Lansten, Conrad Lenz and William Daniels, defendants.

· Before the commencement of this suit, Charles Fitzsimons had filed his petition for a mechanic's lien against Thielman in the same court.

After this suit was brought, the following other petitions were filed to enforce liens against the same building: Moses A. Thayer against Thielman and others; C. A. Lansten and Conrad Lenz against Thielman and others; and William Daniels and Neil Brown against Thielman and others. In each of these suits several intervening creditors appeared and filed their petitions. These suits were all consolidated and tried as one suit. The other facts necessary to an understanding of the case are stated in the opinion. Christian Thielman, L. A. Nichols, H. P. Caldwell, Levi Wing and L. J. Clark, prosecute this writ of error.

Mr. OMAR BUSHNELL, for the plaintiffs in error.

Messrs. HAINES & TRIPP, for defendant in error, Carr.

Messrs. JOHNSTON, ROGERS & APPLETON, for defendant in error, Fitzsimons.

Mr. J. V. LE MOYNE and Mr. CHAS. W. CONSTANTINE, for defendants in error, Burg, etc.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that Thielman determined, in the summer of 1872, to erect a theatre on the premises upon which it is sought to enforce these various liens; that, for the purpose of purchasing and paying for the lot and erecting the building, he borrowed of Dunne, and gave to him his notes for $7,500, and, to secure the payment of the same, executed to Clayborn, on the 17th day of July, 1872, a trust deed on the lot. It was duly

acknowledged on that date, and was recorded on the 7th day of September following.

On the 17th day of August, 1872, Thielman contracted with Case for hardware, to be used in the erection of the building, which was furnished, from time to time, as the work progressed, until it was about completed. On the 6th day of September, Fitzsimons contracted to sell lumber for the erection of the building, which he delivered at the time the contract was made. The other contracts with material-men and laborers seem to have been made after the 7th day of September, 1872, the date of the recording of the trust deed to Clayborn, for the use of Dunne.

On the 6th day of September, of the same year, Thielman executed six promissory notes for $500 each, payable to his own order, and due at different times, and gave to H. P. Caldwell a deed of trust on the premises to secure the payment of the same, which was recorded on the next day. These notes seem to have been endorsed and delivered to Nichols, Wing, Caldwell and Clark.

On the 11th of December, in the same year, Thielman joined in a deed of trust to Louis A. Nichols, to secure the payment of $2,550. This latter note was held by Caldwell, Clark, Nichols and Wing, and the evidence shows that none of these notes had ever been paid, but were still due and owing to the holders. This last trust deed was recorded on the 23d of December, after all of the contracts for labor and materials were entered into, and all, or nearly all, delivered and performed.

Petitions for the enforcement of the various liens were filed at different times in the Circuit and Superior Courts of Cook county. The holders of the indebtedness secured by the deeds of trust were made defendants, with the trustee. Subsequently the petitioners in the circuit court obtained leave to intervene and set up their claims in the Superior Court, and the cases were thereupon consolidated and heard as one, and at the same time. On the hearing, the court below decreed that the trust

deed to Clayborn is a first and prior lien, and that the material-men and laborers have the next lien, and that the last two trust deeds are to be postponed until the first lien, and laborers, and material-men are paid. From this decree an appeal is prosecuted and a reversal is asked.

It is first objected, that the court below had no power to consolidate and try these cases as one; that it is opposed to the well established chancery practice to consolidate cases having different parties and involving different rights. This is no doubt the general rule. *Miles* v. *Danforth,* 37 Ill. 156. And, as a general proposition, it is true that a defendant cannot have affirmative relief on an ordinary answer, which is not made both an answer and a cross-bill, praying for appropriate relief on the facts set up against the relief sought in the bill. In opposition to such a practice, however, *McConnell* v. *Hodson,* 2 Gilm. 640, is referred to as announcing a different rule. But that case must be understood as only holding that an answer which is only responsive to the bill cannot be treated as a cross-bill, so as to decree affirmative relief. But after a defendant has fully answered the bill, no objection is perceived to his then stating new matter, entitling him to such relief as he would in a cross-bill, and ending with an appropriate prayer for relief. We can see no particular merit to be imparted to such pleadings by having them detached and on separate papers. We can see no particular objection, even in form, to such a course. At the ancient common law, in pleadings, it was not considered vicious, in the same paper to reply to one plea and demur to others, or in the same manner, to plead to one count and demur to others, although, at law, form has always been regarded more than in equity proceedings.

The 10th section of the lien law authorizes all persons interested in the subject matter of the suit, or in the premises to be sold, to become parties, on making application to the court in which the suit is pending; and the 12th section provides that the court shall ascertain the amount of each claim, and direct

the sale of the premises, and distribute the proceeds to each claimant, in proportion to his claim. The 16th section prescribes the mode of trial, and authorizes the court to delay making an order of sale until all the claimants are heard. From these enactments, it would seem that no practicable means could be employed to have a trial as therein provided, unless resort was had to a hearing of all the cases at one and the same time, without an actual or virtual consolidation. When the statute makes a requirement, without specifying the manner in which it shall be done, courts are left to select the most suitable and convenient mode of accomplishing the end. Such, it is believed, has been the unchallenged practice for almost a quarter of a century, and no other or better mode of proceeding has been suggested.

As we have understood the practice under this statute, it has never required a co-claimant to file a formal cross-bill, but only by answer, set up his claim, and so of any other lien holder. The statute requires all persons in interest to be brought before the court, and not to make a final order until all are heard, and to distribute the fund among the claimants in proportion to their claims. This being the requirement of the statute, we cannot say that it was intended that there should be separate proceedings, either in form or in fact. If separate, how can the court, unless by consent of the parties, stay one case ready for trial, until others are placed in like condition. But when all persons in interest are made parties, either as petitioners or as defendants, and their interests are disclosed to the court, we see no necessity for cross-bills. The right is cast by the statute upon the parties, and when brought before the court, they, like parties to a bill for an account, all become actors. When one lien holder has filed his petition to subject the property to the payment of his claim, it is a proceeding to subject the property as a fund, not only for the satisfaction of his own lien, but for all other liens enumerated in the statute. It from that time forward becomes a fund for distribution among the lien holders. And

the answer of all of the defendants, whether brought in by service, or who intervene, are to be regarded as claimants, who are required to prove their claims against the fund.

Various exceptions are taken to the practice adopted by the court, and the allowance of claims on informal pleadings in other respects. But in view of the statute, a trial should be had, as though the pleadings were formal, on the answers of the defendants, and the petition of those who intervened, on the showing set out in their petition to be let in to assert their rights.

It is objected that the court below erred in sustaining a demurrer to the plea that the intervening parties had suits for their claims pending in the circuit court. We perceive no error in such a decision. The statute requires all persons in interest to be parties, hence the ordinary rule of practice in such cases is abrogated. To allow such a plea, would be to defeat the provisions of the statute, or, in many cases, produce great delay, where there are but two terms of court each year, as the party would have to get an order staying proceedings until he could dismiss. In this case, if these parties, after intervening and proceeding to trial, were to attempt to proceed in their cases in the other court, on a proper application they would be prevented, and their suits dismissed.

Had the intervening creditors made a proper application, the circuit court would have transferred, or changed the venue of the intervening creditors to the Superior Court, that the suits might be consolidated, and tried with the other case ; and, on such an application, it would only have required the facts to have been shown as the basis for the order. This right is necessary and proper, that the provisions of the statute shall be carried into effect, and we incline to think this the better practice. It frees the proceeding from all complication, and can work no injury to any party in interest, and tends to promote full and complete justice.

It is urged that the court below erred in allowing claims for materials not used in the erection of the building. We think

392          THIELMAN *et al. v.* CARR *et al.*          [Sept. T.

Opinion of the Court.

the evidence fails to sustain the objection. But, under this head, it may be proper to determine whether the furnace and pipes put into the building are to be considered as a part of the building. It is believed that ordinary stoves and pipes have been always conceded to be personalty or mere chattels. They, as all know, are not intended to become, and form a part of the building. But with furnaces it is different, as it is known that they are intended to be permanent, and a part of the structure. They are seldom, if ever, detached from the building, so long as they last, whilst stoves are frequently removed and again replaced. Another difference is, that furnaces cannot be removed without taking them apart, and the intent must usually control. If, as is believed to be generally true, furnaces are intended to be permanent, and to become a part of the building, that should stamp its character, and require it to be held realty.

It would seem to be as much so as a steam engine in a mill or factory, and we are not aware, that when placed in the building by the owner, it has ever been doubted that it thereby becomes realty. And it is difficult to see any thing to distinguish the two. Whether the same rule should apply to a lessee it is not now necessary to consider.

It is also insisted that Carr is not entitled to a lien because he made no agreement for a specified amount of material when he made the agreement with the owner of the lot, and that material was obtained as required for use in the progress of the building. This, we think, most clearly falls within the first section of the act of 1861 (p. 179). In fact, we fail to see how any degree of ingenuity could render it even plausible to hold such a contract was not embraced in the lien law. Its provisions must have been overlooked by counsel, or the objection would not have been raised.

There are other objections taken, which we deem it wholly unnecessary to consider, and hence have passed them over, and only considered such as seemed to possess plausibility. Nor are a number of objections more than simply stated. No

reason is assigned why they are to be regarded, or in what the error consists.

But the court below erred in deciding that the Clayborn trust deed should be a prior lien to the lien of Carr and Fitzsimons. Whilst it is true that the deed was made and the notes were delivered before, it was not recorded until after Carr and Fitzsimons' contracts were made. This, then, to the extent of their claims, gave them the first liens on the land and buildings, to be charged *pro rata* to each according to their several values. Then came the trust deeds to Clayborn and to Caldwell, as liens on the realty, as prior liens to the other material-men and laborers, who entered into their contracts after the 7th of September, the day these deeds were recorded. But which of the trust deeds is to have the precedent lien on the real estate depends upon which was first filed for record, which we fail to discover from this record. As to these deeds, all of the contractors for labor and materials have a preferred lien on the building erected on the premises; but if that is not sufficient for their payment, they would have a deferred lien on any surplus of the proceeds of the sale of the land over and above the satisfaction of the debts secured by the trust deeds, and the *pro rata* share of that fund to be applied to pay Carr and Fitzsimons. The creditors, under the trust deeds, are entitled to a lien on any surplus arising from the sale of the building after paying the material-men and laborers. The contractors for labor and materials have a preferred lien on the surplus of the realty after paying off the trust deeds. The trust deed to Nichols, which, so far as we can see, was executed and recorded after all of the other contracts were made, has a lien on any surplus that may remain after the other deeds of trust, and the material-men and laborers are paid. For the error indicated, the decree of the court below is reversed and the cause remanded.

*Decree reversed.*