## Wm. A. McGillis v. James Hogan, John S. Cooper and A. W. Eames.

1. EQUITY PRACTICE—*Cross-bill, When Not Necessary.*—A formal cross-bill is not necessary to enable a defendant to obtain payment of a claim due him and arising out of the subject-matter in litigation.

2. SAME—*Answer Not to be Treated as a Cross-bill.*—A mere answer can not be treated as a cross-bill in equity by simply requesting that it be so treated, even if it sets up some affirmative right in the defendant.

3. SAME—*When a Cause Should Be Referred to a Master, for an Accounting.*—The court discusses the question as to when a cause must go to a master for an accounting.

4. SAME—*When Not Error to Refuse Relief Under a Cross-bill.*—It is not error to refuse relief under a cross-bill, if a party necessary to such relief, though a party to the original bill, is not made a party to the cross-bill.

5. SAME—*What is to be Considered as an Abandonment of a Cross-bill.*—Where an answer asks that it be taken as a cross-bill, but does not pray for an answer to such cross-bill, and no rule is entered to answer it as a cross-bill, it is abandoned as a cross-bill.

6. SAME—*When a Trustee is Entitled to Compensation as an Attorney.*—Under a contract with an attorney making him a trustee and authorizing him to deduct from the proceeds of intended litigation, the reasonable fees thereof, if the trustee, with the assent of the parties, conducts the litigation as their attorney, he will be entitled to deduct from the proceeds reasonable compensation for his legal services.

7. LIMITATIONS—*No Application to Trusts.*—The statute of limitations has no application to a case involving a direct trust between the *cestui que trust* and the trustee, cognizable only in a court of equity.

**Bill to Close a Trust.**—Error to the Circuit Court of Kankakee County; the Hon. John Small, Judge, presiding. Heard in this court at the May term, 1899. Affirmed in part, reversed in part and remanded with directions. Opinion filed October 12, 1899.

Paddock & Cooper, attorneys for plaintiff in error.

Wilber, Eldridge & Alden, attorneys for defendant in error A. W. Eames.

H. K. Wheeler, attorney for defendant in error John S. Cooper.

Mr. Justice Dibell delivered the opinion of the court.

This was a bill in equity filed by John S. Cooper in the Circuit Court of Kankakee County to close a trust and for other relief, to which bill William A. McGillis, James Hogan and A. W. Eames were defendants. The defendants severally answered, and Eames filed a cross-bill against Cooper and McGillis, which was answered.

There was a hearing, and a decree in favor of complainants and cross-complainant, from which McGillis prosecutes this writ of error. Eames assigns cross-errors.

In 1882 McGillis, a resident of Kankakee, Illinois, and Hogan, a resident of Ashland, Massachusetts, became partners under the name McGillis & Co., and said firm on September 6, 1882, entered into a written contract with the Western Air Line Construction Co., an Iowa corporation, by which McGillis & Co. undertook to grade and complete forty-six miles of the roadbed of the Indiana, Illinois and Iowa railroad, at certain prices therein named. The measurements and decisions of the engineers of the Construction Co. were made conclusive upon the parties. Provision was made that the Construction Co. might complete the work at the expense of McGillis & Co., after notice to that firm, if the engineer had just apprehension McGillis & Co. would not complete it within the time limited. Performance by McGillis & Co. was secured by a bond for $20,000. After McGillis & Co. had done part of the work and received certain payments they abandoned the work, alleging as an

excuse that the engineer of the Construction Co. had fraud-
ulently given too low estimates upon the work they had
done, by which they were deprived of $35,000 due them for
work done. About that time Hogan lost a large sum of
firm money in gambling houses in Chicago. The firm
employed John S. Cooper, a Chicago lawyer, and he
recovered a part of it for them. The Construction Co.
served notice upon McGillis & Co., as provided by the con-
tract, that it would complete the work at the expense of
McGillis & Co., and it did thereafter complete the work at
an expense, as it claimed, of $22,000 in excess of the
amount it would have cost the Construction Co. under
the contract with McGillis & Co. McGillis & Co. had no
moneys with which to prosecute a suit against the Con-
struction Co., and the latter had no tangible property in
this State, except its interest in said road-bed and super-
structure placed thereon. McGillis & Co. were indebted to
many parties for work and material furnished them for use
upon the contract. An agreement was made between the
firm and Cooper, their attorney, by which McGillis, the
first party, and Hogan, the second party, executed an instru-
ment assigning to Cooper, the third party, as trustee, all
their rights under said contract. Cooper accepted the trust
in writing. The instrument gave Cooper full control of
the controversy between McGillis & Co. and the Construc-
tion Co., authorized him to sue upon their claim, and to
settle and compromise all said matters, and to bind McGil-
lis & Co. in relation thereto. The instrument imposed upon
Cooper the following directions as to the disposition of the
funds when collected:

"First: Out of any moneys or funds derived from a
settlement or a decree or judgment relating to the matters
in controversy, that is to say out of any moneys or funds
derived for work done or materials furnished or damages
incurred by said first and second parties on the line of the
Indiana, Illinois and Iowa railroad, the said Cooper as such
trustee shall pay and deduct the reasonable costs, fees and
expenses of such settlement or litigation. Second: He
shall next pay the amount due by said first and second par-
ties for work done or materials furnished on the line of

said railroad by other persons, as the same is shown upon the books and papers of said firm composed of said first and second parties hereinbefore referred to. Third : He shall divide the remainder of such money or funds so derived, between the said first and second parties hereto, in accordance with the interest that each have in said copartnership, the same being an equal interest, but the partnership accounts between said first and second parties not having yet been settled."

Thereafter Cooper brought an attachment suit in the Circuit Court of Kankakee County against the Construction Co. upon said claim. Defendant procured the removal of the cause to the United States Circuit Court. A trial was had in Chicago before Judge Bunn and a jury, occupying some ten days, and resulting in a verdict for plaintiffs for about $17,000. A motion for a new trial was made by the defendant, and argued at Madison, Wisconsin, and granted upon defendant paying the costs and $500 to plaintiffs. A second trial of about eight days' length was had before Judge Gresham and a jury, and plaintiffs had a verdict for $24,165.57. A motion for a new trial was argued and denied, and judgment rendered. A writ of error to the Supreme Court of the United States was sued out and made a supersedeas. Upon application to that court the supersedeas was set aside, but the writ of error was retained. John Allison & Co., creditors of McGillis & Co., sued the latter and got judgment. That matter was then adjusted by consent of McGillis & Co. by the assignment to Allison & Co. of $8,800 of said judgment against the Construction Co. Thereafter Cooper settled with the Construction Co. for $20,000 in cash, he first agreeing that the fees of himself and his assistant, Gen. Stiles, should be scaled down seventeen per cent and also procuring Allison & Co. to accept $7,900 in full of their judgment.

In all this litigation Cooper acted as the main attorney for McGillis & Co., assisted at the trial by Gen. Stiles and some younger lawyers. The Construction Co. was represented by able lawyers, led at the first trial by W. C. Goudy and at the second by Edwin Walker. The litigation was expensive for plaintiffs. It was a matter of great diffi-

culty to prove their case. The grading had been done upon an old road-bed constructed eleven years before McGillis & Co. began work. After McGillis & Co. quit, the Construction Co. at once went on and finished the work. The Construction Co.'s engineer in making estimates for McGillis & Co. had assumed that the original roadbed was a complete and perfect structure of a certain height and length. McGillis & Co. claimed it was washed out and destroyed in many places, which they had filled and for which they should be paid. It was a matter of much difficulty and expense, and required the aid of experienced civil engineers, to ascertain and prove how much McGillis & Co. had done upon this road-bed, finished as it was before the first trial, and con taining the work of three different sets of contractors; and especially to overcome the estimates made while McGillis & Co. were at work by the engineers of the Construction Co., whose decisions were by the contract made final. Money was therefore called for by Cooper frequently and in large sums. When Hogan went into the firm he borrowed considerable sums of money of A. W. Eames of Ashland, Mass., which Hogan claims he put into the firm business. When Hogan was called upon to advance funds for the prosecution of the suit against the Construction Co. he was unable to do so. He thereupon assigned his interest in the contract and suit to Eames, and the latter advanced money, mainly for the first trial. He paid $1,700 directly to Cooper, and paid $410 at the request of Cooper to procure the attendance of Hogan and his brother, who were unable or unwilling to come to the trial unless their expenses were paid. He thus advanced $2,110. McGillis advanced over $4,000, mostly for the expenses of the second trial. McGillis also paid claims against McGillis & Co. for labor and material to the amount of $2,696.35, prior to the settlement with the Construction Co.

After Cooper received the $20,000 he distributed it on December 10, 1888. At that time he paid the remaining expenses of the suit (except certain amounts aggregating $392, which he forgot, and has since paid out of his own moneys); paid Allison & Co. $7,900 in full of their judg-

ment against McGillis & Co.; paid Gen. Stiles the balance due him for his services at the trials; deducted the balance he claimed to be due himself for his legal services; and paid McGillis $6,696.35, which left of the $20,000 only $7.65, and that sum Cooper retained.    He took at that time from McGillis a paper, signed by McGillis, the body of which was as follows:

"Received of John S. Cooper, trustee, the sum of $2,696.35, money paid out by me in payment of the indebtedness of McGillis & Company, incurred in the work of construction of Indiana, Illinois & Iowa R. R. under a contract with the Western Air Line Construction Company.    Also received at the same time from John S. Cooper, trustee, the sum of $4,000 with which to pay the remaining debts of said McGillis & Co., which I agree to devote to such purposes, rendering an account to said Cooper of my actings and doings whenever so requested."

The proof shows that McGillis thereafter expended more than $4,000 in payment of the remaining debts of McGillis & Co.    The firm of McGillis & Co. was organized to take this contract from the Construction Co., and the firm never did any other business.

After Eames had advanced the $2,110 he made an assignment under the insolvent laws of Massachusetts, and thereafter purchased from his assignee all interest in this matter, and then began to demand from Cooper payment both of the $2,110 so advanced and also of the moneys he had originally loaned Hogan.    Cooper then began this suit on September 9, 1895, to enjoin Eames from suing him, to compel McGillis to account for the $4,000 paid him December 10, 1888, to compel McGillis and Eames to settle between themselves the matter of Eames' advances, and to have the trust declared closed.    In the final decree the court below discharged Cooper, declared the trust closed, and gave Eames a personal decree against both McGillis and Hogan for $3,131.10, being said $2,110 advanced by Eames, with interest thereon from December 10, 1888, the date when McGillis received the $4,000.

Should the decree be reversed because the master did not state an account between the parties?    To answer this we

must inquire, first, whether any of the parties can now be heard to complain of said omission, and if not, then, second, whether the accounts to be investigated here are so complicated that the court will of its own motion refuse to consider them without such statement. Eames and Cooper each argue here that no statement of account by the master was necessary. There is therefore no error committed against them. McGillis' only assignment of error on the subject is, "the court erred in not referring the case to a master in chancery to state an account." The record before us contains an order entered February 20, 1896, referring the cause to the master to take the proofs, and another order entered the next day directing "that said master in chancery state accounts between all the parties, and that depositions taken may be opened before the master and evidence considered by him." The court therefore did the very thing which the assignment of error complains it did not do. The assignment is therefore not sustained by the record. It is not assigned for error that the master failed to obey said direction, nor that the court proceeded to a final hearing without waiting for the account to be stated. The court below was not asked to defer the hearing till such account was stated. Clearly McGillis is not in a position to complain that error was committed in not awaiting a statement of the accounts between the parties.

Is the case in such a condition that this court should refuse to decide it, but should of its own motion send it back for an accounting before the master? If the case requires a settlement either of all the accounts of Cooper as trustee, or of all the firm accounts of McGillis & Co., then such a statement of account by the master was an indispensable step to be taken before any final decree could be rendered, and the court will of its own motion require that action to be taken. If those matters are not open to consideration and settlement in this case, then we are of opinion no reference was necessary, for reasons appearing further on. An examination of the original bill shows its object was to compel Eames to look to the fund of $6,696.85 Cooper had paid McGillis for repayment of his advances,

and to discharge Cooper from further liability. The cross-bill of Eames claimed that out of the $20,000 Cooper was equitably bound to pay Eames, and that McGillis was also equitably bound to pay Eames out of the $6,696.85 McGillis received from Cooper, and it sought to enforce such payment. Neither of these bills sought a revision of Cooper's accounts and acts as trustee from the beginning. Eames did not ask a general settlement of the accounts of McGillis & Co. The answer of McGillis to the original bill concluded as follows:

" And this defendant by way of cross-bill to the said bill of complaint alleges that said complainant is indebted to the firm of McGillis & Hogan to the amount of $10,000, for which he should account and pay over to said firm, and that he is indebted to this defendant in the further sum of $2,000, for which he should account and pay over. And this defendant by way of cross-bill prays the court for accounting as to said Cooper, as trustee, and that he may be decreed to pay over to said McGillis & Hogan and to said McGillis such sum or sums as on accounting may be due from him."

McGillis concluded his amendment to said answer as follows:

" And by way of cross-bill to the said original bill this defendant prays that said Cooper may be called upon to account for all moneys which he has retained for counsel fees which he has paid to Stiles and Starrin, as set forth in the said bill of complaint, and that a money decree may be had against him, the said Cooper, for whatever sum may be found due to the firm of McGillis & Hogan."

It will be observed that these prayers do not specifically name any one as defendant to the supposed cross-bill, and if they can be construed as naming Cooper as a defendant, they do not ask that he answer, nor is there after the answer any new matter stated as a basis for the relief prayed, so as to bring the case within the exceptional rule announced in Thielman v. Carr, 75 Ill. 385, which was a suit to establish a mechanic's lien, in which class of cases the court held a formal cross-bill not necessary to enable a defendant to obtain payment of his claim in its due order. In Purdy v. Henslee, 97 Ill. 389, the authorities are

reviewed and the established practice is adhered to, that a mere answer can not be treated as a cross-bill by simply a request that it be so treated, even if it sets up some affirmative right in defendant. It is there held (and also in Blatchford v. Blanchard, 160 Ill. 115), that even under Thielman v. Carr, *supra*, the matter of the cross-bill must be sufficiently stated to constitute a cross-bill if detached from the answer; and McGillis did not comply with that requirement. But if McGillis' answer could be considered a cross-bill, no answer to it was asked, and as a cross-bill it was abandoned. (Purdy v. Henslee, *supra;* Hungate v. Reynolds, 72 Ill. 425; Parke v. Brown, 12 Ill. App. 291.) Again, if this supposed cross-bill had any defendant it could only be Cooper, named in the prayers above noted. But no accounting of the kind now in question could be had under said supposed cross-bill without Hogan and Eames being defendants thereto, as they had an interest in such an accounting. McGillis therefore had no pleading which entitled him to an account of the receipts and disbursements of Cooper prior to the payment of said $6,696.85 to McGillis nor to an account of the receipts and disbursements of McGillis & Co. Even if the pleadings had made a case for an accounting by the trustee it would have been proper for the court to hear preliminary proofs first, to determine whether an accounting ought to be had and upon what basis. The court did hear proof from which it was justified in finding that in November, 1896, Eames and McGillis, at Cooper's office in Chicago, went over his accounts thoroughly, and discussed and were satisfied with each item thereof, and then gave him their joint note for $1,000 upon the deficiency. True, Eames and McGillis deny such an examination of the accounts, but when the reasonable probabilities are added to the testimony of Cooper and Clark and to the memoranda then made by Clark, the court below was warranted in believing there was then a settlement. On December 10, 1898, it is clear McGillis was fully advised how the moneys had been and were being applied, and he acquiesced therein and was a party thereto. The transactions of that date constituted a settlement as between

Cooper and McGillis, and were binding upon McGillis. The only matter not then closed as between McGillis and Cooper was the disposition to be made of the $6,696.85 paid by Cooper to McGillis that day. Therefore the preliminary proofs warranted the court in not going into any question of accounting by the trustee or between the partners and Eames. No accounting was necessary to ascertain what Eames advanced for the expenses of the suit, for there were but six items, and their amounts and dates when advanced were not disputed. McGillis' testimony showing to whom he paid remaining debts of McGillis & Co., amounting to more than $4,000, is also undisputed. No reference to state an account was therefore required.

Further, the only object for which McGillis now urges the reference is to avoid the charges of Cooper for his professional services. It is argued, first, that he could have no compensation as trustee under the trust instrument; second, that he made a verbal contract to do the work for $2,500, or ten per cent of the sum collected; and third, that his charges were excessive. Cooper was the attorney of McGillis & Co. before this contract. It was as their attorney he devised this arrangement. Not only did he perform the main labor of preparing and trying the case, but it is obvious the parties so intended when the contract was made. If he was only to pay others, the word " deduct," in the first clause of the contract above quoted, relative to the application of the proceeds of the suit, was inapplicable. It said, " the said Cooper * * * shall * * * deduct the reasonable * * * fees * * * of such settlement or litigation." Construing the contract by the situation of the parties, and by their subsequent acts, we think they meant by these words that Cooper should take out of the fund reasonable compensation for his legal services. McGillis and Hogan testify he told them his charges would be $2,500, or ten per cent. This negatives the present claim that he was to serve for nothing. Cooper denies that conversation. If it occurred at all it was before the trust instrument was drawn, and was therefore superseded by its provision for reasonable fees. Cooper's charges appear ·

very heavy. But the litigation was important; the labor
of making a case for plaintiff was great; the trials were in
the United States Circuit Court at Chicago, with services at
Madison, Wis., and at Washington. Able lawyers were on
the other side. The litigation continued six years. The
result was an evident success, where defeat and a large lia-
bility upon the bond given by McGillis & Co., with its
contract, were entirely possible. Cooper introduced proof
that his charges were reasonable for the services performed.
There was no evidence to the contrary. The parties never
questioned the sums charged by him for his services while
they were being rendered, nor for seven years thereafter,
and evidently McGillis would not have done so then had not
Eames pressed his claim for reimbursement of his advances.
We think the present record would not justify us in reduc-
ing Cooper's charges or directing him to now account con-
cerning them before a master.

Eames argues he should have been given a decree against
both McGillis and Cooper for the sums he originally
loaned Hogan. We think it clear, even from the testimony
of Eames himself, when it is all considered, that the loan
was not to McGillis & Co. but to Hogan, personally, to fur-
nish him capital to put into the firm. But in either case
the court below properly refused a decree therefor here.
If the loan was to Hogan it would only be recoverable out
of his interest in the firm after all firm debts were paid;
and the assets are not sufficient to pay the firm debts, and
there is no surplus for the partners. If the loan was to
McGillis & Co. it is not one of those debts " for work done
or materials furnished on the line of said railroad," which
Cooper was to pay under the second clause of the trust
instrument above quoted, giving directions as to the applica-
tion of the trust fund. It was, therefore, not a debt pay-
able in terms out of said fund, and Cooper is not chargeable
with any duty concerning it. There is no fund in court
out of which it is payable. It can not be recovered here
against the firm of McGillis & Co. because (if for no other
reason) Eames did not see fit to make Hogan, one of the
partners liable for the debts of the firm, a defendant to

his cross-bill.   If he was seeking to enforce in this proceeding a mere legal demand against McGillis & Co., both partners should have been defendants to his cross-suit. Moreover, if it was a mere loan to McGillis & Co., wholly unconnected with the trust matters involved in this suit, the statute of limitations, set up in McGillis' answer, seems to be a complete defense.

Cooper only paid out of the fund the costs and expenses he had personally incurred.   The first direction of the trust instrument as to the distribution of the fund was that he should pay the costs, fees and expenses of such litigation. The moneys advanced by Eames and McGillis to defray those expenses were, in our judgment, as much payable under that clause as they would have been if Cooper had advanced his own money or borrowed funds at the bank to defray the expenses of the suit.   It was a matter of indifference to McGillis whether the money he advanced for expenses was refunded to him or the same amount applied in liquidation of the debts of the firm, as he was liable for said debts; and it is not important whether McGillis is correct in testifying, the receipt he gave does not truly state for what the money was paid him.   But Eames was not liable for the debts of McGillis & Co., and therefore it was important to him that the $2,110 he advanced should be repaid to him in the order provided in said trust instrument and out of said trust funds.   He had rights under said instrument by virtue of the assignment from Hogan to himself after the trust instrument was executed.   He had a right to make advances to protect the interests Hogan had assigned to him. The proof shows Eames advanced these moneys from time to time upon Cooper's repeated written promises to repay them out of the first moneys he should receive as the fruits of the litigation, with interest at six per cent.   One of these promises was as follows:

" All moneys advanced by you shall be paid first out of the moneys collected, with six per cent interest from the date of advancement to the date of payment."

In another letter Cooper wrote Eames for a statement " of all moneys you have advanced to me since I received

the assignment of the claim and the dates of such advances, as they will bear interest at six per cent from the time the advance was made, as I promised you." There are other like letters, and the proof also shows an oral agreement to the same effect. Cooper had to raise money for necessary expenses of the litigation, and we are satisfied he had authority to bind the firm and fund for its repayment with interest. It was Cooper's duty to repay Eames. He recognized this duty in his testimony, but excused his turning the entire balance of the fund over to McGillis without paying Eames as he had agreed, by testifying McGillis had agreed to do it for him out of said funds. But his testimony as to what McGillis said shows he wronged Eames in trusting McGillis to pay Eames. He testified McGillis said he was satisfied Eames was a partner of Hogan, and that Hogan had gambled away the last payment made by the Construction Co., and that Eames and Hogan owed him money and he wanted to settle with Eames. If McGillis said that, it should have showed Cooper he did not intend to pay Eames, and Cooper should have himself carried out the first provision of the trust instrument and performed his own promises. McGillis denies this conversation, but admits in his testimony (not sufficiently abstracted) that about the time of the settlement he and Cooper had a long conversation about Eames, and admits that before the settlement he was fully acquainted with the fact Eames had made these advances upon promises by Cooper of repayment out of the judgment that should be obtained. McGillis therefore received the $6,696.35 with knowledge that Eames was entitled to have his advances repaid out of that fund, both under the first provision of the trust instrument, and under the promises made Eames by Cooper in harmony therewith. He therefore took the fund charged with that trust in favor of Eames, and the statute of limitations is not a defense. If there was not enough of the fund to repay all advances for expenses made by both Eames and McGillis, Eames should have been paid first, for he was not liable for the firm debts or for the costs of the litigation, while McGillis was liable for both. The decree

in favor of Eames against McGillis was therefore right, except that it should have further given Eames interest at six per cent per annum on the several sums advanced from the dates of their advancement to the date of the decree. The decree should also be against Cooper for the same amount, with execution against both. The present decree in favor of Eames is also against Hogan. This is error, because Hogan is not a defendant to Eames' cross-bill. He has not assigned error and the fact would not be here noticed if it were not necessary to direct a larger decree; but it is obvious that in entering another and larger decree for Eames it can not be against Hogan, because Eames did not make him a defendant or pray relief against him. The decree should provide that if Cooper is compelled to pay anything thereunder to Eames he shall be entitled to a supplementary decree against McGillis and Hogan for the repayment thereof, with execution.

The decree is reversed so far as it is above disapproved, and it is in all other respects affirmed; and the cause is remanded to the court below with directions to modify its decree in conformity with this opinion. McGillis and Cooper will each be required to pay one-half the costs of this court.